**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles A. KARLIN,
Defendant–Appellant.**

**No. 86–2697.**

United States Court of Appeals,
Seventh Circuit.

Argued April 15, 1987.

Decided July 20, 1988.

Rehearing and Rehearing En Banc
Denied Sept. 14, 1988.

William S. Mautner, Atinsky, Kahn, Sicula & Teper, Milwaukee, Wis., for defendant-appellant.

Francis D. Schmitz, Asst. U.S. Atty., Joseph P. Stadtmueller, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before WOOD, Jr. and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Appellant Karlin was convicted of one count of engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1) and one count of possessing a firearm while a convicted felon in violation of 18 U.S.C.App. § 1202(a)(1) (repealed 1986).[1] Karlin appeals from the judgment of conviction and sentence and raises numerous challenges, all of which we reject.

## FACTS

Karlin was indicted June 3, 1986 on one count of being engaged in the business of dealing in firearms without a license and six counts of being a felon and knowingly possessing a firearm in or affecting commerce, with each of the latter six counts alleging possession of a separate firearm. The activities alleged in Count 1 occurred between November 8, 1984 and November 11, 1985. The first count stemmed from Karlin's activities with Donald Chaon, a gun collector. The next five counts, of which he was acquitted, charged Karlin with possessing firearms he sold to Chaon. The seventh count charged Karlin with possessing a firearm on December 19, 1985. This weapon was found under the driver's

---

1. 18 U.S.C.App. § 1202(a)(1) was originally enacted as part of Title VII, Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, effective June 19, 1968. It provided:

    (a) Any person who—
    (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony,
    * * * * * *
    and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

    Pub.L. 98–473, § 1802, effective October 12, 1984, added at the end of § 1202(a) the following language:

    In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsec-

    tion, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

    Section 1202(a)(1) remained in that form at the time of the offense alleged in Count 7. It was repealed, effective 180 days after May 19, 1986, by Pub.L. 99–308, § 104(b). Sections 102(6)(D) and 104(a)(1) and (4) incorporated its substance into 18 U.S.C. § 922(g) and § 924(a)(1)(B) and (e).

    During the relevant period, § 922(a)(1) and its corresponding penalty provision, § 924(a), provided as follows:

    § 922. Unlawful Acts
    (a) It shall be unlawful—
    (1) for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of ... dealing in firearms....

    § 924. Penalties
    (a) Whoever violates any provision of this chapter ... shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine. Section 902, Title IV, Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. 90–351, effective June 19, 1968, as amended by Gun Control Act of 1968, Pub.L. 90–618, § 102, effective December 16, 1968.

seat of Karlin's vehicle immediately following his arrest on suspicion of burglary.

The evidence showed that Karlin sold about fifteen firearms to Chaon. Chaon paid cash or traded other items, such as collectible coins, for the firearms. During this time period Karlin attempted to sell other firearms to Chaon, who declined purchase for various reasons, including high price. Chaon collected various items and considered Karlin his "picker"—a person who scouts for collectible items and sells them to a collector. Chaon in turn occasionally sold or traded firearms to other collectors. The guns were all manufactured outside the state of Wisconsin, and were sold by Karlin in Wisconsin.

In December, 1985, a West Bend police officer received reports of a burglary suspect being chased by citizens. The officer arrived at a parking lot and found two citizens standing over Karlin, who was lying face down on the ground with his foot inside the open driver's door of a van. The citizens indicated that Karlin was the man they had chased and that one of them had removed him from the car. The officer arrested Karlin, handcuffed him, removed identification, brought him to his feet, patted him down, and placed him in the rear of the squad car. The officer then searched the van and found a .38 caliber revolver inside a stocking cap under the driver's seat. The gun formed the basis for Count 7, of which Karlin was convicted.[2]

## I. SEIZURE OF THE COUNT 7 WEAPON

Karlin argues that the weapon found in the vehicle should have been suppressed because the search that produced it violated the Fourth Amendment. He contends that the search was not incident to arrest, as found by the district court.

In *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969), the Supreme Court held that when a lawful arrest is made, the police may, as an incident to arrest and without a

warrant, search the person of the arrestee and any area into which he might reach in order to grab a weapon or evidentiary items. The Court found invalid a search of the arrestee's entire house. 395 U.S. at 763, 768, 89 S.Ct. at 2043.

In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Court considered the application of *Chimel* doctrine to a search of the passenger compartment of an automobile after arrest of an occupant. The Court of Appeals of New York had held that when the search was made there was no longer any danger that the arrestee or a confederate might gain access to the article seized. The Supreme Court reversed, and upheld the search.

■ The Court noted the difficulty experienced by courts in deciding the proper scope of a search of an automobile incident to a lawful custodial arrest of its occupants. The Court also remarked upon the desirability of a rule under which police could in most instances reach a correct determination beforehand, and the undesirability of litigation in every case over the existence of supporting reasons. The Court held

> that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile ... [and] may also examine the contents of any containers found within the passenger compartment. ...

453 U.S. at 460, 101 S.Ct. at 2864 (footnotes omitted). Karlin argues, relying on *Chimel,* that by the time the search occurred, the driver's seat was no longer an area into which he could have reached. He was in a squad car, an undisclosed distance from the van, and handcuffed.

Karlin seeks to distinguish *Belton* on the ground that the arrestees in that case appear to have been made less secure than he, and were somewhat closer to their car. If those differences in degree are to con-

---

2. Karlin was sentenced to five years imprisonment on Count 1 and 15 years without parole on Count 7. These sentences are concurrent with each other, but consecutive to any sentence imposed in a pending state case.

trol, the Court's preference for a straight-forward rule for guidance of police officers and avoidance of hindsight determinations in litigation would be frustrated. It seems quite likely that, in instances where occupants of a car are arrested, they will be outside the car and will have been placed under some measure of security before the car is searched.

Karlin's contention would require a factual determination in each instance of how thoroughly the arrestee had been secured and his distance from the vehicle. It is significant that in *Belton,* the New York Court had determined, as Karlin proposes here, that by the time of the search there was no longer any danger that the arrestee or a confederate might gain access to the article.

In *United States v. Cotton,* 751 F.2d 1146, 1148 (10th Cir.1985), the Tenth Circuit relied on *Belton* in rejecting an appellant's argument, similar to Karlin's, "that, standing outside the Camaro, handcuffed, he would have been physically unable to reach into the car to dispose of the blue bag or to pull a weapon from it." The Court explained,

> [t]he Supreme Court expresses quite clearly in *Belton* its goal to formulate a workable rule whereby an officer in the field may be able to evaluate the circumstances surrounding a lawful arrest to determine whether seizure of items in the immediate area of the arrestee is called for.... The rule ... does not require the arresting officer to undergo a detailed analysis, at the time of arrest, of whether the arrestee, handcuffed or not, could reach into the car to seize some item within it, either as a weapon or to destroy evidence, or for some altogether different reason. The facts surrounding each arrest are unique, and it is not by any means inconceivable under those various possibilities that an arrestee could gain control of some item within the automobile. The law simply does not require the arresting officer to mentally sift through all these possibilities during an arrest, before deciding wheth-

er he may lawfully search within the vehicle.

751 F.2d at 1148.

The Eighth Circuit relied on *Belton* in upholding a search of an automobile which took place immediately after an occupant had been arrested and placed in the police car. *United States v. McCrady,* 774 F.2d 868, 870–71 (8th Cir.1985).

In *United States v. Fleming,* 677 F.2d 602 (7th Cir.1982), this court discussed *Belton* in rejecting a similar argument in a slightly different context. Two men dropped paper bags just before being arrested. Police officers picked up the bags unopened while they were within the grabbing area of the arrestees. At least one of the bags was not opened for five minutes, after the arrestee who had possessed it had been disarmed, taken to the street and handcuffed, and was standing next to a police officer. This court rejected the argument "that because the danger addressed by a *Chimel* search had dissipated, so had any justification for opening the bags without a search warrant." 677 F.2d at 606. After noting that the bags when first picked up had been within the grabbing area, the court said,

> Only after we have engaged in the same *ex ante* calculations that the police themselves faced should we consider whether subsequent events made a *Chimel* search unreasonable. At this second level of inquiry it does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures. Thus handcuffing Rolenc and having reinforcements enter Fleming's house should not be determinative, unless we intend to use the Fourth Amendment to impose on police a requirement that the search be absolutely contemporaneous with the arrest, no matter what the peril to themselves or to bystanders.

677 F.2d at 607.[3]

It seems clear here that the arresting officer followed reasonable procedure in

---

**3.** *See United States v. Queen,* 847 F.2d 346, 353– 54 (7th Cir.1988) for cases, some involving occu-

securing custody of Karlin, and then proceeding with a search of the passenger compartment of the van into which Karlin might have reached at the time of arrest. We think, under *Belton*, such a search is deemed reasonable, without determining whether the officer had rendered Karlin incapable of reaching into the van.

## II. ALLEGED ERROR IN PROVING ONLY ONE OF THE PRIOR CONVICTIONS BEFORE THE JURY

The indictment charged in the possession counts, including Count 7, that Karlin had three felony convictions for burglary. The three enumerated were an April 4, 1966 conviction in Manitowoc County, an October 11, 1968 conviction in Manitowoc County, and an August 1, 1978 conviction in Dodge County, all in Wisconsin.

Before trial, counsel for the parties stipulated to the 1978 conviction, and that the evidence of other convictions would not be read to the jury. They further stipulated that the fact of three prior burglary convictions is not an element of the offense, but rather a basis for enhanced sentencing of defendant if convicted. Karlin had previously filed a notice that he reserved certain rights including personal objection to all stipulations by counsel. We have found no objection by him to the stipulation just referred to.

Karlin argues on appeal that the three felony burglary convictions are an element of a distinct § 1202(a)(1) offense, which must "be proved to the jury, and do not merely serve to enhance the sentence."

■ Although there is conflict between the circuits on this point,[4] this court has held, since oral argument in this case, that

although one previous felony conviction is an element of the offense, "additional [robbery or burglary] convictions were relevant only for sentencing; admission at trial of evidence of multiple convictions not only would be unnecessary but also would be prejudicial." *United States v. Pirovolos*, 844 F.2d 415, 420 (7th Cir.1988).

## III. CLAIM THAT THE 1966 CONVICTION WAS VOID

In March and April, 1966, when Karlin was 20, he was before the County Court of Manitowoc County, Wisconsin, on a charge of a burglary committed while he was 19. He appeared with counsel, and was convicted and sentenced.

In juvenile proceedings in 1961 he had been found delinquent and committed to the Department of Public Welfare until age 21. He was free on parole at the time of the 1966 offense. Karlin argues that under those circumstances the juvenile court continued to have jurisdiction over him, and unless the juvenile court waived jurisdiction, which it did not do, the county court had no jurisdiction to try him even though he had reached age 18. He contends that the 1966 conviction was therefore a nullity and could not be a predicate prior conviction under § 1202(a)(1). Under our view of the case, the question is only whether it can enhance the sentence.

In 1980 he had attempted to have the conviction set aside on these grounds by the circuit court for Manitowoc County. In denying the petition that court pointed out that although the statutes permit custodial control by the Department to continue until the child reached 21, § 48.34(4), Wis.Stats. 1965, provided that continuing jurisdiction

---

pants of automobiles and some not, upholding searches as incident to arrest where the securing of the arrestee rendered remote the possibility of his grabbing a weapon or accessing evidence.

**4.** Two circuits hold that the existence of three convictions is an element of a distinct offense: *United States v. Davis*, 801 F.2d 754, 755 (5th Cir.1986); *United States v. Brewer*, 841 F.2d 667, 668 (6th Cir.1988).

Six circuits hold that the existence of three convictions is not an element of a distinct of-

fense, but the additional convictions serve to enhance the penalty. *United States v. Jackson*, 824 F.2d 21, 22–26 (D.C.Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 715, 98 L.Ed.2d 665 (1988); *United States v. Hawkins*, 811 F.2d 210, 220 (3rd Cir.1987); *United States v. Pirovolos*, 844 F.2d 415, 420 (7th Cir.1988); *United States v. Rush*, 840 F.2d 574 (8th Cir.1988); *United States v. West*, 826 F.2d 909, 911 (9th Cir.1987); *United States v. Gregg*, 803 F.2d 568, 570 (10th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987).

for custody purposes "shall not prevent . . . a criminal court from taking jurisdiction of a person eighteen or over who is alleged to have violated a state or federal law." *State v. Karlin,* Memorandum Decision, p. 4, June 4, 1980, Circuit Court for Manitowoc County.

██ We agree that the 1966 conviction was not void.[5]

## IV. CLAIM THAT THE 1968 CONVICTION WAS NOT PROVED

Apparently because records in the office of the clerk of court of Manitowoc County have been misplaced, the government could not produce the 1968 judgment of conviction or a certified copy. Karlin argues that a conviction which can not be established by a certified copy of the judgment can not constitute a predicate conviction under § 1202(a)(1). Under our view of the case, the question is only whether it can enhance the sentence.

██ At the time of sentencing, the trial judge said:

The Court has before it a transcript of the arraignment and sentence proceedings dated October 11, 1968 before the Honorable Harold W. Mueller. And at that time it appeared that the defendant was present in person and by his attorney, Everett B. Hale. It also states that the defendant, Charles Karlin, pleads guilty to all four counts contained in the information. And it does contain a statement that follows by the Court, finding the defendant guilty as charged in the information.

Also present to the Court is a copy of the information, as well as counsel has indicated, the authentication sheet signed by both the Clerk of the Circuit Court, and also the presiding judge. . . .

On that basis the Court must find that there is, beyond a reasonable doubt, a satisfactory proof of conviction.

The finding is not clearly erroneous, and we know of no principle making the judgment of conviction the exclusive means by which the fact of conviction may be proved.[6]

## V. OTHER CONTENTIONS

A. Karlin points out that Rule 609, Federal Rules of Evidence, limits the use for impeachment of a conviction more than ten years old. By analogy he argues that the 1966 and 1968 convictions are too old to enhance the penalty.

We deem the statute, former § 1202(a)(1), to be controlling. It did not limit the age of the previous convictions.

B. Karlin points out that the 15 year minimum provision of former § 1202(a)(1) was added after the dates of all the offenses of which he was previously convicted. He argues that the provision operates as an *ex post facto* law because it added new penal consequences to those offenses.

██ We conclude that the provision is not invalidly retroactive because it is not an additional penalty for the offenses commit-

---

5. The government argues that possible invalidity of the conviction would be irrelevant under *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980). In that case the Supreme Court held "that § 1202(a)(1) prohibits a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds." *Id.* at 65, 100 S.Ct. at 921. We do not reach the question of the impact of *Lewis* on convictions used for enhancement nor on convictions by a court without jurisdiction.

6. The occurrence of the 1968 conviction of burglary is very clear. At sentencing, Karlin's counsel informed the court that the question whether the 1968 conviction should be vacated was currently under consideration by the circuit court for Manitowoc County. The government

has furnished a copy of the subsequent decision denying vacation. Judge Hazlewood reviewed all the documents he considered, including docket entries, and wrote "The Court is satisfied beyond a reasonable doubt that Mr. Karlin was convicted of three counts of burglary and one count of operating without owner's consent in 1968." *State v. Karlin,* Case No. Y3–225, Y3–226, Memorandum Decision, p. 2, December 15, 1986, Circuit Court for Manitowoc County. In 1970, the Supreme Court of Wisconsin reviewed and affirmed an order denying a motion by Karlin to withdraw his pleas of guilty after the 1968 conviction. The opinion summarizes the proceedings and sentence on October 11, 1968. *Karlin v. State,* 47 Wis.2d 452, 454, 177 N.W.2d 318 (1970).

ted before its enactment, but rather an increased penalty for the offense which occurred after enactment. *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948).

C. Karlin argues that although the government proved that this gun must at some time have traveled from state to state, there was no proof that the gun was "in or affecting commerce" while in Karlin's possession.

■ We note that under former § 1202(a)(1), the government need only establish "the minimal nexus that the firearm have been, at some time, in interstate commerce." *Scarborough v. United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977) (footnote omitted); *United States v. Martin,* 732 F.2d 591, 592 n. 2 (7th Cir.1984). The only case cited by Karlin deals with an offense under a different provision of the Act, and recognizes the difference in construction between that provision and former § 1202(a)(1). *United States v. Ruffin,* 490 F.2d 557, 559 (8th Cir.1974).

D. During deliberations, the jury asked in a written question, "Can we have a verdict of guilty on circumstantial evidence only?" In responding in open court, the court referred the jury to a portion of the instructions present in the jury room, and pointed out that the last sentence said that "all of the evidence in the case, including circumstantial evidence, should be considered by you in arriving at your verdict." A juror, presumably the foreperson, responded, "All right. We read that and discussed it at length. We do assume that it is in the affirmative then?" The court answered, "Yes."

Karlin contends that the "Yes" answer improperly suggested to the jury that the judge thought the circumstantial evidence in this case was enough to convict.

■ We note that the jury had seven different counts before it, and neither the question nor answer referred to a particular count or counts. We think the answer is more reasonably understood as a correct general assertion that circumstantial evidence can be sufficient, standing alone, to support a verdict rather than the judge's evaluation of the circumstantial evidence on any or all counts in this case, or his opinion as to defendant's guilt. The judge had just repeated the portion of his instructions which required the jury to consider all the evidence, including circumstantial, and the jury proceeded, in fact, to acquit on five of the seven counts. In the light of the full record, we find no prejudicial error in the "Yes" answer.

E. Relying on *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), deciding that in enacting 18 U.S.C. § 922(b) and 18 U.S.C.App. § 1202(a) Congress did not intend that a felon be convicted of both the receipt of a firearm under § 922(b)(1) and of possession of the same firearm under § 1202(a), Karlin argues that he can not be convicted of both possession under § 1202(a)(1) and of engaging in the business of dealing in firearms without a license under § 922(a)(1).

■ A quick answer is that the weapon involved in Count 7 was not involved in Count 1, charging dealing. Moreover, even if it were, the offense of possession of a firearm as a felon under § 1202(a)(1) is separate and distinct from the offense of engaging in the business of dealing in firearms without a license under § 922(a)(1). Section 1202(a)(1) required proof of a previous conviction of felony, which is not required under § 922(a)(1). Section 922(a)(1) requires proof of engaging in the business of dealing in firearms, which was not required under § 1202(a)(1). It is accordingly presumed that Congress intended the same conduct to be punishable under both provisions. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Ball v. United States,* 470 U.S. at 861, 105 S.Ct. at 1671–72.

F. Karlin filed a brief *pro se.* We have read and considered his brief, but find no meritorious argument based on facts in the record.

We have considered all points raised by Karlin or his counsel. Any propositions not specifically discussed are considered to

be without merit. The judgment is AF-FIRMED.