**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Franklyn ARANGO,**
**Defendant–Appellant.**

No. 88–3135.

United States Court of Appeals,
Seventh Circuit.

Argued March 27, 1989.

Decided July 17, 1989.

---

Kristina M.L. Anderson, Thomas M. Durkin, Asst. U.S. Attys., Chicago, Ill., for U.S.

John Lewis, Skokie, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and KANNE and HENLEY, Circuit Judges.[*]

KANNE, Circuit Judge.

Franklyn Arango appeals the district court's refusal to suppress evidence discovered during two warrantless automobile searches conducted after he was arrested for assaulting a police officer. He also appeals the court's decision to grant his motion to dismiss pursuant to the Speedy Trial Act without prejudice, rather than with prejudice as he had requested. We affirm.

## I.  BACKGROUND

On October 29, 1987, two DEA Task Force members, Detective Clifford Berti and Sergeant Thomas Martin of the Chicago Police Department, were participating in

---

[*] The Honorable J. Smith Henley, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

an on-going narcotics investigation on the north side of Chicago. While patrolling a neighborhood where active drug trafficking was suspected, the officers received a radio message that a white Cherokee jeep, with no license plates, had been observed in the area. The message did not link the vehicle or its occupants to any known illegal activity, but the situation was considered suspicious. The officers later saw the jeep and followed it for about nine blocks until it pulled over and parked. The officers parked their unmarked police car nearby as the jeep's driver, Tony Maldonado, and its passenger, the appellant Franklyn Arango, left the jeep and began to walk in the officers' direction.

Officers Berti and Martin, experienced narcotics investigators, immediately noticed that Maldonado and Arango each were wearing digital beepers which were activated, indicating incoming calls. They then initiated contact with Maldonado and Arango near the jeep, identifying themselves as police officers and asking the suspects for identification.

Maldonado produced a wallet, containing an Illinois driver's license, and handed the wallet and his car keys to Officer Berti. However, Arango replied that he did not have any identification with him. The two officers openly discussed that they both had seen Arango before, but were not sure under what circumstances. Officer Berti asked Maldonado if he was the owner of the jeep and received a negative response. When asked who the owner was, Maldonado hesitated, glanced at Arango, and stated that he did not know.

Throughout this exchange, Maldonado repeatedly placed his hands in his pockets and then removed them. Officer Berti instructed Maldonado to keep his hands out of his pockets, apparently fearing that Maldonado might be carrying a weapon. When Maldonado again placed his hands in his pockets, Officer Berti immediately instructed Maldonado to remove his hands and reached into Maldonado's jacket pocket, pulling out cash totalling over $2,200.00.

Thereafter, Officer Berti walked to the jeep and looked inside the window in an attempt to establish the vehicle's owner and Arango's identity. When he looked through the window, Officer Berti observed a portable telephone between the seats and a man's wallet on the passenger seat where Arango had been sitting prior to leaving the vehicle. Officer Berti opened the locked door, using the keys which Maldonado had given him earlier, picked up the wallet, and looked inside. Upon seeing Arango's photo identification, he remembered that a fellow DEA agent had told him that Arango was wanted in connection with a narcotics-related shooting which had occurred in Chicago the previous month. He also suddenly remembered that he had arrested Arango in 1985 on a cocaine-related charge. With this realization, Officer Berti immediately drew his revolver and left the jeep.

However, while Officer Berti was in the jeep, Officer Martin, who had remained nearby with the suspects, likewise remembered that Arango was wanted in connection with the recent shooting. Unfortunately for Officer Martin, he did not wait for Officer Berti to rejoin the group before he asked Arango if the police were still looking for him in connection with that shooting. With this inquiry, Arango immediately shoved Officer Martin who fell to the ground and broke his kneecap. The suspects then fled the scene of the assault as Officer Berti fired a warning shot and gave chase.

Two nearby uniformed police officers apprehended Arango about a block away. At that time, Officer Berti formally arrested Arango for assaulting a police officer and conducted a pat-down search. Immediately thereafter, the officers returned Arango to the scene of the assault where Officer Martin was in need of medical attention.

Once there, Officer Berti conducted a more detailed search of Arango's person, discovering and seizing about $3,800.00 in cash, the previously observed digital beeper, and some car keys. Berti then searched the jeep, finding $16,000.00 behind the passenger's seat, a package of cocaine under a jacket in the back seat, a portable telephone between the jeep's front seats, and

several documents bearing Arango's name in the glove compartment.

Thereafter, the agents drove the jeep to the DEA garage in downtown Chicago and conducted a second search of the vehicle. This search revealed a secret compartment underneath the carpet between the front and rear seats which contained four additional packages of cocaine.

Arango made his initial appearance the next day. October 30, 1987, and was formally arraigned on November 30, 1987. On December 28, 1987, Arango filed a motion to suppress which the court denied on July 15, 1988. On August 9, 1988, Arango filed a "Motion to Dismiss with Prejudice" because of an alleged violation of the Speedy Trial Act. The court granted the motion, but without prejudice, rather than with prejudice as Arango had requested. Thereafter, Arango waived his right to reindictment and was convicted. The district court denied Arango's posttrial motion to reconsider the court's earlier decision to dismiss the indictment without prejudice.

## II. DISCUSSION

Arango raises two issues on appeal. First, Arango argues that the district court erroneously denied his motion to suppress the evidence discovered during two warrantless searches of the jeep. He also contends that the district court erroneously granted his motion to dismiss for a Speedy Trial Act violation without prejudice, rather than with prejudice as he had requested.

### A. *Fourth Amendment Violations*

Officers Berti and Martin conducted several separate searches in this case.[1] The district court found that Officer Berti's search of the jeep immediately following

Arango's arrest qualified as a proper warrantless search incident to arrest. The court also found that the subsequent search of the jeep at the DEA garage was justified as a warrantless auto search based upon probable cause supported in part by the evidence seized during the search incident to arrest. We will address the legality of each of these searches separately.

### 1. *Search Incident to Arrest*

In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court held that police officers, subsequent to a lawful arrest, may search the person of an arrestee, and any area into which he might reach in order to grab a weapon or evidentiary items, without a search warrant and as merely an incident to arrest. 395 U.S. at 762–63, 89 S.Ct. at 2039–40; *see also United States v. Karlin*, 852 F.2d 968, 970 (7th Cir.1988) (discussing the search incident to arrest exception in the context of automobile searches). In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court extended this exception to searches of automobiles following a lawful arrest. The Court held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile...." 453 U.S. at 460, 101 S.Ct. at 2864 (footnote omitted), *quoted in Karlin*, 852 F.2d at 970.

Arango argues that the officers could not search the vehicle incident to his arrest because of the special circumstances surrounding the arrest. Arango contends that this exception to the fourth amendment's warrant requirement does not apply when

1. Arango alleges that the officers conducted six separate "searches," including (1) Officer Martin's reaching into Maldonado's jacket pocket, (2) Officer Berti's unlocking of the jeep door to gain access to the wallet on the front seat, (3) Officer Berti's pat-down search of Arango following Arango's apprehension following his assault on Officer Martin, (4) Officer Berti's more thorough search of Arango's person once he returned Arango to the scene of the crime, (5) Officer Berti's search of the jeep's interior at the scene following Arango's arrest, and (6) the officers' search of the jeep after it was removed to the DEA garage. The district court opined that the search of the jeep which yielded Arango's wallet was not based upon probable cause and that no exception to the fourth amendment justified the officers' conduct. However, the district court found that various exceptions to the fourth amendment's warrant requirement applied to justify the other searches.

(1) the crime for which an arrest is made, and which forms the basis for the search incident to arrest, does not directly involve the vehicle itself or (2) when the actual arrest does not occur while the arrestee is an occupant of the automobile or at least within immediate "grabbing distance" of the vehicle. He thus concludes that, because he was arrested for the crime of assault upon a police officer and was arrested approximately a block from the scene of the assault and returned there prior to the search, the search of the jeep cannot qualify as a legal search incident to arrest.

■ Initially, we reject Arango's attempt to distinguish *Belton* based upon the nature of the offense and the manner in which it was committed. *Chimel* and *Belton* are premised upon the need to protect police officers and citizens who may be standing nearby from the actions of an arrestee or his confederate who might gain access to a weapon. These cases also recognize the need to prevent an arrestee or a confederate from destroying evidence located in the area. We believe that the proper focus must be upon the presence of an arrestee, not the offense or the manner in which it was committed. We recently rejected an arrestee's attempt to distinguish *Belton* upon grounds very similar to those advanced by Arango here.

In *Karlin,* a police officer received a radio report of a burglary suspect being chased by citizens. 852 F.2d at 970. When he arrived on the scene, he found two citizens standing over the defendant who was lying on the ground with his foot inside the open driver's door of a van. *Id.* The citizens indicated that the defendant was the man they had chased and that they had removed him from the van. *Id.* After arresting and handcuffing the defendant, the officer placed him in the rear of the squad car. *Id.* Thereafter, the officer searched the van, finding a gun which formed the basis of a charge for which the defendant eventually was convicted. *Id.*

■ On appeal, the defendant argued that *Belton* did not apply because at the time the officer searched the vehicle the defendant was secured in the squad car and could not reach any weapon or evidence, the justifications for the exception originally formulated by the Supreme Court in *Chimel. Id.* We specifically rejected this argument, refusing to determine the applicability of *Belton* based upon the degree to which the officer secured the defendant prior to conducting the search. We stated:

> If those differences in degree are to control, the Court's preference for a straightforward rule for guidance of police officers and avoidance of hindsight determinations in litigation would be frustrated. It seems quite likely that, in instances where occupants of a car are arrested, they will be outside the car and will have been placed under some measure of security before the car is searched.

*Id.* at 970–71. We noted that decisions from this and other courts supported our reasoning. *See United States v. Queen,* 847 F.2d 346, 353–54 (7th Cir.1988), *and cases cited therein.*

We believe that our holding in *Karlin* largely addresses Arango's contentions. Clearly, *Karlin* forecloses Arango's argument that *Belton* does not apply because he was secured in the rear seat of a squad car following his arrest. Further, it recognizes that the presence of an arrestee mandates the need to protect both persons and evidence from the often imprudent and unpredictable actions of a person just arrested, or perhaps even a nearby confederate. This principle applies whenever an arrestee is within "grabbing distance" of these items without regard as to the nature of the offense committed.

It is the threat of arrest or the arrest itself which may trigger a violent response—regardless of the nature of the offense which first drew attention to the subject. For example, in search incident to arrest cases in which an arrest is made inside a residence, officers clearly have a right to search certain rooms, drawers, closets, and other areas for their protection and the protection of evidence without reference to the offense for which the arrest

is made. We therefore hold that *Belton* similarly justifies a search of a vehicle incident to arrest without regard to the nature of the offense supporting the arrest.

■ Nevertheless, we must address Arango's argument that *Belton* cannot apply because he was arrested approximately one block from where the assault occurred and returned to the scene by the officers which only then created a need to search the nearby vehicle. In *Karlin*, we stated that *Belton* applied, even though the arrestee was handcuffed and secured in the rear seat of a squad car, and that the officer could search any area "into which [the arrestee] might have reached at the time of arrest." 852 F.2d at 972. Using a literal interpretation of this language, one might argue that a search is proper only if the arrestee is apprehended when he is in the immediate vicinity of the vehicle—and under ordinary circumstances, the scope of a search may be so limited. Thus, Arango raises a plausible argument that his capture approximately a block away from the scene of the assault perhaps should preclude an application of the search incident to arrest exception under *Belton*.

However, under the specific facts of this case, we believe that the search of the vehicle as incident to an arrest was entirely reasonable. When Arango was apprehended approximately one block from where he committed the assault, Officer Berti conducted a quick pat-down of Arango's person. Within only a very short time, the officers, with Arango in-tow, returned to the place where Officer Martin was in need of medical attention for his broken kneecap. Once at the scene, and after checking on Officer Martin's condition, a thorough search of Arango's person and the vehicle was made. Under the circumstances presented here, the immediate return of Officer Berti to the location of his injured partner necessarily put Arango in proximity to the jeep. Thus, consistent with our holding in *Karlin*, the search of the vehicle was incident to the arrest and appropriate to protect all persons as well as evidentiary items.

Contrary to Arango's assertions, we do not believe our decision here will "give arresting officers unlimited discretion to search any vehicle, by merely transporting the arrestee to the vehicle's location." We do not hold that officers may search by artificially creating a situation to fit within an exception to the fourth amendment's warrant requirement. Nothing in the record indicates that the decision to return Arango to the scene of the assault was for the purpose of supporting a warrantless search of the vehicle; the officers had a legitimate reason and a pressing need to return to the scene of the assault immediately. Bringing Arango with them was certainly the sensible thing to do. Further, although not raised by Arango as a basis for rejecting application of *Belton*, we do not believe that the delay between Arango's capture and the initial pat-down and the subsequent search of the vehicle was significant enough to destroy the "nearly contemporaneous" aspect of the exception. *See, e.g., Queen*, 847 F.2d at 352–53.

An arrestee cannot distinguish *Belton* when a situation naturally exists and fits within the recognized exception to the fourth amendment's warrant requirement. The search must be upheld when the officers merely did what they were legally entitled to do under the prevailing circumstances. As we recognized in *Karlin*, both *Chimel* and *Belton* are based upon the need for bright-line rules, rules which will allow police "in most instances [to] reach a correct determination beforehand" and avoid "litigation in every case over the supporting reasons." 852 F.2d at 970 (discussing *Belton*). We also noted that the law:

does not require the arresting officer to undergo a detailed analysis, at the time of arrest, of whether the arrestee, handcuffed or not, could reach into the car to seize some item within, either as a weapon or to destroy evidence, or for some altogether different reason. The facts surrounding each arrest are unique, and it is not by any means inconceivable under those various possibilities that an arrestee could gain control of some item within the automobile. The law simply

does not require the arresting officer to mentally sift through all these possibilities during an arrest, before deciding whether he may lawfully search within the vehicle.

*United States v. Cotton,* 751 F.2d 1146, 1148 (10th Cir.1985), *quoted in Karlin,* 852 F.2d at 971.

■ We believe that our holding today furthers "the Court's preference for a straightforward rule for guidance of police officers and avoidance of hindsight determinations in litigation." *Karlin,* 852 F.2d at 971. We therefore hold that the district court properly denied Arango's motion to suppress the evidence seized during the search conducted immediately following Arango's arrest.[2]

### 2. *The Postarrest Search and the Automobile Exception*

Having found that the search of the jeep at the time of Arango's arrest was legal, we easily may dispose of Arango's remaining fourth amendment argument. The district court also held that following the search incident to arrest the officers had probable cause to conduct a more thorough warrantless search of the vehicle at the DEA garage pursuant to the "automobile exception." *See Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201

(1983); *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Boden,* 854 F.2d 983, 994 (7th Cir.1988). Because we agree that the original search of the jeep incident to Arango's arrest was not illegal or "tainted," we must reject Arango's "fruit of the poisonous tree" argument. We hold that the district court correctly refused to suppress the evidence discovered during the agents' postarrest search of the jeep at the DEA garage.

### B. *The Speedy Trial Act*

■ The district court dismissed the original indictment against Arango based upon a seventy-two to ninety-three day (depending upon whose version of the facts one chooses) violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* The parties do not dispute that dismissal was proper under the act. However, Arango argues that the district court erroneously granted his motion to dismiss "without prejudice," rather than "with prejudice" as he had requested.

■ To determine whether dismissal should be with or without prejudice, the act states that a court "shall consider, among others, each of the following factors: the

---

**2.** Even if we assume solely for the sake of analysis that the search incident to arrest exception did not justify the officers' search of the jeep shortly after Arango's arrest, we believe that the search could have qualified as a valid warrantless inventory search. Once Arango was lawfully arrested, the officers had a right to inventory the contents of the impounded vehicle to protect the owner's valuables, to protect the government from claims of lost, stolen, or damaged property, and to protect the officers from dangerous objects therein. *See, e.g., Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

We believe that the officers conducted such a search, if not at the scene of the impoundment, at the DEA garage a short time later. Thus, even if the search of the vehicle conducted at the scene immediately following the arrest were somehow illegal, the evidence discovered during that search nevertheless would have been admissible under the "inevitable discovery" doctrine. *See Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

Arango asserts that the "illegality and intrusiveness" of the two pre-arrest searches "illustrates the bad faith and investigatory motives of the officers" and renders the warrantless inventory search exception *per se* inapplicable. He correctly states that such searches must be conducted pursuant to standardized procedures and not merely as a pretext for establishing probable cause to justify further searches. *Bertine,* 479 U.S. at 372, 107 S.Ct. at 742. However, while the officers' clearly had "investigatory motives" when they initiated contact with Arango and Maldonado, the fact remains that the inventory search was the result of Arango's own imprudent decision to assault a police officer, a decision reached after Officer Martin uttered the fateful question concerning Arango's involvement in a narcotics-related shooting, not Officer Berti's search of Maldonado's jacket or the jeep. We therefore easily could base admission of the evidence upon this exception to the fourth amendment's warrant requirement.

seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1). We may reverse a district court's decision to dismiss with or without prejudice based upon these factors only if the district court abused its discretion. *United States v. Taylor,* —— U.S. ——, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 (1988). However:

> a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review. Only then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress has deemed pertinent to the choice of remedy, thereby failing to act within the limits prescribed by Congress.

*Id.* 108 S.Ct. at 2419. Nevertheless, the Supreme Court noted that "the district court's judgment of how opposing considerations balance should not lightly be disturbed." *Id.* at 2420.

Arango first contends that the court abused its discretion to grant the motion without prejudice because the court ignored the substantial and prejudicial length of the delay. We do not agree.

■■■ The district court correctly noted that possession of large amounts of cocaine is undeniably a serious offense. Further, the delay in this case was at most three months. We do not believe that such a delay is *per se* "substantial" enough to justify dismissing the charges with prejudice. In addition, Arango has failed to demonstrate actual prejudice from the delay; he has not demonstrated how the delay affected his ability to defend himself or substantially impair any of his "intangible rights." *See Taylor,* 108 S.Ct. at 2421–22. Finally, we believe that the district court properly focused upon the cause of the delay. That is, because the delay resulted from the court's misunderstanding of the status of certain motions, including Arango's motion to suppress, rather than from

some fault of the government, dismissing the indictment with prejudice would not serve any purpose of encouraging the government to avoid the neglect or bad faith in the prosecution of its cases. *See Taylor,* 108 S.Ct. at 2420. We therefore hold that the district court properly and correctly considered all of the factors mandated by the Speedy Trial Act.

However, Arango also contends that the district court improperly considered factors outside the scope of those which the act contemplates. Specifically, Arango alleges that the court impermissibly based its decision to dismiss without prejudice, rather than with prejudice, upon proof of guilt elicited from Arango in his testimony during his suppression hearing. He argues that if a court is allowed to base its decision on this evidence then a defendant could not assert his fourth amendment rights without somehow tainting all subsequent proceedings, including those under the Speedy Trial Act. Arango claims that, in effect, the court convicts the defendant without conducting a trial and consequently refuses to grant an otherwise meritorious motion without prejudice rather than with prejudice.

We believe Arango's claim is unfounded. The district judge merely stated that he was "aware of the testimony and the motion to suppress" which he felt he should take into consideration under section 3162(a)(1) in determining that the offense charged "related to a significant amount of cocaine." He clearly was not deciding Arango's guilt or innocence at that stage any more than a district judge makes a decision of guilt or innocence when ruling upon a defendant's appeal following the denial of a motion for release on bail. Instead, the district judge was properly considering all of the evidence made available to him to determine the seriousness of the offense, an inquiry which he was *required* to make under section 3162(a)(1). We therefore hold that the district judge did not improperly consider the testimony given at the suppression hearing and did not abuse his discretion in denying Arango's motion to dismiss with prejudice.

## III. CONCLUSION

We hold that the district court properly refused to suppress the evidence generated by the two warrantless searches conducted after Arango's arrest for assaulting a police officer. Under the facts and circumstances of this case, the first search was a legal search incident to arrest. Further, the evidence discovered and seized during this search provided in part sufficient probable cause to conduct a second more thorough search under the automobile exception to the fourth amendment. We also hold that the district court did not abuse its discretion to dismiss the original indictment "without prejudice," rather than "with prejudice" as Arango requested.

The district court's decision is AFFIRMED.