# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-2546

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KORVELL DENNIS PITTMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 03-40095—**Michael M. Mihm**, *Judge.*

ARGUED APRIL 5, 2005—DECIDED JUNE 13, 2005

Before POSNER, EASTERBROOK, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant pleaded guilty to being a felon in possession of a firearm and was sentenced under the federal sentencing guidelines (before the Supreme Court's *Booker* decision) to 188 months in prison, the bottom of the applicable guideline range but only eight months above the statutory minimum. The Armed Career Criminal Act, 18 U.S.C. § 924(e), imposes a 180-month minimum sentence on anyone who has at least three prior convictions of specified offenses. The judge found that the defendant's

criminal record qualified under this provision, and findings of prior convictions are not within the scope of *Booker*'s rule. *United States v. Booker*, 125 S.Ct. 738, 756 (2005); *United States v. Ngo*, 2005 WL 1023034, at *2-4 (7th Cir. May 3, 2005).

In pleading guilty, the defendant reserved the right to challenge the district court's denial of his motion to suppress evidence that was seized from his car when he was arrested. The facts are not in dispute. A Rock Island police officer, on patrol in a squad car one night accompanied by a civilian observer, spotted a car that didn't have a functioning rear-license-plate light, as required by Illinois law. The officer turned on his emergency lights. The defendant, who was driving the car, pulled over to the side of the road and stopped. There was a passenger in the front seat of the car, and when the car stopped he leapt out and starting running. The police officer, soon joined by other officers whom he had summoned, chased the passenger, who was soon found hiding in the basement of a house half a block from the car. A check with the police dispatcher revealed that the passenger, whose name was Raymond Stinde, had an outstanding arrest warrant. So the police arrested him, brought him back to the first officer's squad car, and locked him in the back seat. The civilian observer told the officer that as soon as the officer had disappeared from sight in pursuit of Stinde, the driver of the stopped car had leapt out of the driver's side of the car and run away too. Upon learning this, police searched the glove compartment of the car and discovered shotgun shells. Stinde told them that there was a sawed-off shotgun in the trunk of the car and that both the shotgun and the shells belonged to the defendant.

The defendant had fled with the car keys, and the police didn't try to open the trunk or to obtain a warrant to search it, but instead had the car towed to the police department. Having in the meantime discovered through a registration

check that the defendant's wife was the registered owner of the car, the police went to the defendant's home to interview him and while there obtained from his wife a written consent to search the car (it was her car, remember). The police asked the defendant to come with them to police headquarters, and he agreed. After being given his *Miranda* warnings, he admitted that the shells, and the shotgun in the trunk, were his, just as Stinde had said. The police recovered the car keys, which the defendant had discarded in his flight, and opened the trunk of the car in the police department's parking lot; sure enough, there was the shotgun.

The district judge, in reliance on our decision in *United States v. Arango*, 879 F.2d 1501 (7th Cir. 1989), ruled that the search of the glove compartment was a valid incident to the arrest of Stinde, even though he was half a block away from the car when he was arrested. *Arango* is indeed an identical case, the only difference being that the passenger there was arrested a full block, rather than half a block, from the car—which makes this a stronger case for the government. See also *United States v. Riedesel*, 987 F.2d 1383, 1388-89 (8th Cir. 1993); *United States v. McLaughlin*, 170 F.3d 889 (9th Cir. 1999). But there are contrary cases. *United States v. Edwards*, 242 F.3d 928, 937-38 (10th Cir. 2001); *United States v. Strahan*, 984 F.2d 155, 159 (6th Cir. 1993); *United States v. Fafowora*, 865 F.2d 360, 361-62 (D.C. Cir. 1989); see also 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.1 (4th ed. 2004). These cases explain that the rationale of the rule (the "*Belton* rule," after *New York v. Belton*, 453 U.S. 454, 460 (1981); see also *Thornton v. United States*, 124 S.Ct. 2127, 2130-31 (2004); *United States v. Orozco-Castillo*, 404 F.3d 1101, 1103 (8th Cir. 2005)) that allows the search of the entire passenger compartment of an automobile as an incident to arresting an occupant of the automo-

bile (and thus without needing either a warrant, or probable cause to believe that the automobile contains contraband or evidence of crime) is that there might be a weapon within the occupant's reach that he might grab, or contraband or evidence of crime that he might try to flee with, throw away, conceal, or in some cases even swallow. *Thornton v. United States, supra,* 124 S.Ct. 2127, 2130-31 (2004); *United States v. Sholola,* 124 F.3d 803, 817-18 (7th Cir. 1997); *United States v. Mayo,* 394 F.3d 1271, 1276-77 (9th Cir. 2005).

The rationale embraces the case in which the occupant is outside the car but within easy reach of it, so that he might dive back in and grab a weapon, or perhaps grab contraband or other evidence of a crime and run off with it. *Thornton v. United States, supra,* 124 S.Ct. at 2131; *United States v. Sholola,* 124 F.3d at 817; *United States v. Bush,* 404 F.3d 263, 275-76 (4th Cir. 2005); *United States v. Holmes,* 385 F.3d 786, 791-92 (D.C. Cir. 2004). In *Bush,* for example, "because officers had seen Canty exit the Jeep just before entering the Norwest Financial Bank, and because Canty was in the process of reentering the Jeep at the time of her arrest, [Officer] Jones was permitted to search the Jeep incident to Canty's arrest." 404 F.3d at 275-76. But the rationale can't be stretched as far as this case (or *Arango*). By the time the police got around to searching the car, one of the two occupants had run away (the defendant) and the other (Stinde) was safely under arrest, locked in the back seat of the squad car.

The government argues that *Arango* is justified on grounds of simplicity, as creating a bright-line rule; and it is true that the evolution of the law governing vehicle searches has been marked by a concern for simplifying the standards governing police conduct. *Thornton v. United States, supra,* 124 S.Ct. at 2130-31; *New York v. Belton, supra,* 453 U.S. at 459-60; *United States v. Sholola, supra,* 124

F.3d at 816-17; *United States v. Osife*, 398 F.3d 1143, 1145 (9th Cir. 2005); see also *Atwater v. City of Lago Vista*, 532 U.S. 318, 347 (2001). Police shouldn't have to carry well-thumbed copies of the multivolume LaFave treatise on search and seizure with them wherever they go. The bright line that *Belton* drew was to permit the police to search the entire passenger compartment, and the bright line that *Thornton* drew was to permit the search even if the driver had stepped out of his car before the police officer accosted him. What is *Arango*'s bright line? Suppose the police had not run Stinde to ground until the following day, miles from the car; could they still search the car as an incident to arresting him? If not, what is the sharp boundary between that case and *Arango*? Is it measured by distance? By time? By both? There doesn't seem to be a bright-line alternative to a necessarily rather vague standard of "immediacy." If there is an argument for *Arango*, it is not the desirability of bright lines, but that we don't want to give occupants of a car stopped by the police an incentive to flee in order to prevent the car from being searched.

   We need not wrestle to the ground our doubts about the soundness of *Arango*, as there are other grounds for upholding the search of the glove compartment. Besides the "*Belton* rule" of automobile searches, there is the older but still valid "automobile exception" to the warrant require-ment, the exception that permits the search of an automobile without a warrant when there is probable cause to believe that the search will uncover contraband or evidence of crime. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) (per curiam); *United States v. Ross*, 456 U.S. 798, 809 (1982); *Carroll v. United States*, 267 U.S. 132, 153-56 (1925); *United States v. Washburn*, 383 F.3d 638, 641 (7th Cir. 2004). When both occupants bolted and one was discovered to have an arrest warrant outstanding against him, the police

had probable cause to believe that a search of the car would turn up contraband or evidence of crime. It was apparent not only that both occupants had strong reasons to evade contact with the police, but also that they were probably in league, perhaps embarked on a criminal venture signs of which might be present in the car. The car might also contain documentation that would enable the police to identify and locate the defendant, whereas if they waited to get a warrant to search the car the fugitive's trail might grow cold. And when Stinde was brought back to the police car, he said that nothing the police might find in the defendant's car was his—a tipoff that the car contained contraband—though the search may already have begun when he said this; noticing that the police were about to search the car may indeed have been what prompted the remark.

Even if all else fails, the "inevitable discovery" doctrine provides a solid ground for upholding the search. The trunk as well as the passenger compartment would doubtless have eventually been searched, and the shotgun and shotgun shells found, after the car was towed to police headquarters, so that the police could inventory its contents. Warrantless inventory searches of vehicles are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property. *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976); *United States v. Richardson*, 121 F.3d 1051, 1054-56 (7th Cir. 1997); *United States v. Lomeli*, 76 F.3d 146, 148 (7th Cir. 1996). The Rock Island Police Department has an established policy of conducting inventory searches, and one of the criteria is whether the vehicle has been abandoned. If the driver of a car flees at the approach of the police, this is pretty good evidence that he's abandoned the car—that he doesn't want to be associated with it and

therefore isn't going to reclaim it. Moreover, the police could hardly have left the car sitting where they had stopped it; for all they knew, the driver—who, remember, had run off with the car keys—was lurking about and would come back and drive off as soon as the police left. Rather than sit there indefinitely waiting for the driver to return, the police were entitled to have the car towed, and once it was thus lawfully in their custody they were entitled to conduct an inventory search.

So the motion to suppress was properly denied. The remaining question concerns the impact of the *Booker* decision. In sentencing the defendant, the judge did not realize that, as the Supreme Court was later to hold in *Booker*, the federal sentencing guidelines are merely advisory. The normal remedy in this circuit for such a mistake is a limited remand to the district court to enable the judge to advise us whether, had he known the guidelines were merely advisory, he nevertheless would have imposed the same sentence. *United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005). If the judge advises us that he would have imposed a different sentence, we vacate the judgment and return the case to the judge for resentencing.

We can skip the limited remand if we are highly confident that the judge would have imposed a different sentence, and this exception may seem applicable here because in sentencing the defendant the judge said that it was "true that in the absence of this law, I would probably not be sentencing you to the number of months that I am now required to sentence you to, but I also understand that Congress and the Sentencing Commission were justified in creating special categories for people who have committed violent crimes, a number of violent crimes, so it's no surprise that this sentence is as severe as it is." That makes it sound as if the judge would have imposed a lighter sentence if freed from the incubus of

mandatory guidelines, but we are not sure. For he also remarked that "the uncontroverted truth is that when you got out of the Department of Corrections in 2001, you understood that you had three felony convictions for aggravated criminal sexual abuse and two armed robberies. You knew that whether you felt you were guilty of those crimes or not. You went back in because of this domestic battery, which sounded a little scary too." Moreover, it was the Armed Career Criminal Act, rather than the sentencing guidelines, that placed a 180-month floor under the defendant's sentence. The judge's criticism may have been directed at Congress for specifying such a stiff minimum sentence rather than at the Sentencing Commission's decision to place the bottom of the guideline range applicable to the defendant slightly above the statutory minimum, mainly it seems because of the nature of the firearm (a sawed-off shotgun). U.S.S.G. § 4B1.4(b). A further consideration is that a tiny increment to a long sentence has little practical significance, given discounting to present value (because people discount costs and benefits that accrue only in the future), so the judge might decide that there was no good reason to depart from the guidelines.

To resolve the uncertainty, we order the *Paladino* remand and meanwhile retain jurisdiction of the appeal.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*