UNITED STATES of America, Appellee,

v.

Kevin Dale RIEDESEL, Appellant.

No. 92–2816.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1992.

Decided March 16, 1993.

Alfred Parrish, Des Moines, IA, for appellant.

Patrick J. Reinert, Cedar Rapids, IA, for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT and HENLEY, Senior Circuit Judges.

WOLLMAN, Circuit Judge.

Kevin Dale Riedesel moved the district court[1] to suppress evidence that police officers had seized during a warrantless search of his car and a subsequent search of his home pursuant to a warrant. The district court denied his motion. Reserving his right to appeal the district court's denial of his motion, Riedesel conditionally pled guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), and one count of using a firearm during a drug-related offense, in violation of 18 U.S.C. § 924(c)(1). Riedesel now appeals his convictions, and we affirm.

## I.

In the early morning hours of October 1, 1991, Fort Dodge, Iowa, Police Officer Thomas Hofbauer observed a car that was lawfully parked, but had its motor running. After Officer Hofbauer had called in the vehicle's license plate number and his location, he walked up to the car and noticed that the driver appeared to be asleep or unconscious. Officer Hofbauer tapped on the window, awakening the driver, Kevin Riedesel, from his sleep. Riedesel told Hofbauer that he had gotten drowsy and had thought it would be best if he pulled over to the side of the road to rest his eyes. Riedesel gave Hofbauer his driver's license, which appeared to be valid. Hofbauer then radioed in the license number for a status check.

Because of technical difficulties, Hofbauer was unable to obtain the status report immediately. Consequently, because of the apparent validity of the license, he returned the license to Riedesel and told him that he was free to go. At some point during Hofbauer's encounter with Riedesel, Officer Tim Hayes arrived at the scene. Several minutes after Riedesel had driven away, Hofbauer and Hayes received word from the station that Riedesel's license had been suspended. The two officers drove off in different directions to look for Riedesel.

A few minutes later, Hayes spotted Riedesel's car at a Holiday gas station and reported its location to Hofbauer. As Hayes parked his squad car, Riedesel walked out from the station. The two met at Riedesel's car. Hayes asked to see Riedesel's license, which Riedesel handed over. Shortly thereafter, Hofbauer arrived at the Holiday station and advised Riedesel that he was under arrest for driving with a suspended license.

Riedesel asked the officers what would be done with his car. When they told him that he could leave it at the Holiday station, Riedesel asked the officers if he could lock the doors, and they assented. Riedesel entered the car through the driver's door and leaned across the front bench seat to lock the passenger door, placing his knee on the driver's seat.

At the suppression hearing, Officer Hofbauer stated that he was standing behind Riedesel near the open driver's door when Riedesel reached across the seat to lock the front passenger door. According to his testimony, Hofbauer observed a cellophane package containing a green leafy substance on the front seat as Riedesel leaned across. When Riedesel backed out of the car, Hofbauer entered it to retrieve the package, which contained marijuana. After the officers had handcuffed Riedesel and had placed him in a squad car, they returned to Riedesel's car and searched its interior. They found two additional packages in the crevice between the front seat and the

1. The Honorable Charles J. Wolle, United States District Judge for the Southern District of Iowa.

backrest; one contained a larger quantity of marijuana, and the other contained a yellowish-white powder that the officers believed to be methamphetamine.

After the officers had completed their search of the car's interior, they obtained the car keys from Riedesel and searched the trunk for more drugs. Under a piece of carpet in the trunk, they discovered a stowaway safe. The officers seized the safe, but did not open it. After the officers had finished their search of the vehicle, they completed a standard inventory form describing the vehicle's contents and had a tow truck remove the car to an impound lot.

The police then applied for a warrant to search Riedesel's trailer home. In the accompanying affidavit, the police described the drugs and the safe found during their search of Riedesel's car and other evidence linking Riedesel to drug trafficking. Specifically, the affidavit stated that when the police had inventoried Riedesel's personal possessions during his booking at the station on October 1, they had discovered $2600 in cash. Additionally, the affidavit explained that Riedesel's trailer had been searched on March 15, 1991, when the police were investigating Riedesel in connection with the shooting of a Fort Dodge resident at Riedesel's girlfriend's house. During the execution of the March 15th search warrant, the police had discovered marijuana, books on growing marijuana, other drug paraphernalia, and several guns.

A Webster County, Iowa, magistrate determined that the police had probable cause to believe that contraband and other evidence of a crime was located at Riedesel's trailer and issued the warrant. Upon executing the warrant, the officers seized marijuana, cocaine residue, drug paraphernalia, and a loaded firearm. They also observed a gun barrel and a can of acetone, a precursor to methamphetamine manufacture, but they did not seize these items.

The police next applied for a warrant to search the stowaway safe. They included in their application all of the information used to support their initial search warrant application, together with the results of their search of Riedesel's trailer. The magistrate issued the warrant. When the police opened the safe, they discovered approximately one-third of a kilogram of cocaine in a wrapper of sufficient size to hold a full kilogram of cocaine.

Finally, the police obtained a search warrant to reenter Riedesel's trailer in order to seize the gun barrel and acetone that they had observed in the course of their first search of Riedesel's residence.

On the basis of the items found during the searches of Riedesel's car, the safe, and the trailer, a federal grand jury indicted Riedesel for possession with intent to distribute cocaine and using a firearm during a drug-related crime. Riedesel moved to suppress all of the items seized during the various searches.

A suppression hearing was conducted before a magistrate judge,[2] who issued a report and recommendation that the defendant's motion to suppress be denied. The district court adopted the magistrate judge's report and denied Riedesel's motion to suppress. Riedesel entered a conditional guilty plea, and the district court sentenced him to 30 months' imprisonment on the possession charge and a consecutive 60 month term of imprisonment on the firearm charge.

## II.

In reviewing the grant or denial of a motion to suppress evidence on Fourth Amendment grounds, we are bound by the district court's findings of fact regarding the circumstances of the search unless we believe on the basis of the record as a whole that the district court clearly erred. *See United States v. McBride*, 801 F.2d 1045, 1046 (8th Cir.1986), *cert. denied*, 479 U.S. 1100, 107 S.Ct. 1325, 94 L.Ed.2d 177 (1987); *see also United States v. Jorgen-*

---

**2.** The Honorable John A. Jarvey, United States Chief Magistrate Judge for the Northern District of Iowa.

*sen,* 871 F.2d 725, 728 (8th Cir.1989). We may reverse the district court's ultimate ruling on the suppression motion, however, if the ruling reflects an erroneous view of the applicable law. *Id.*

In this case, each search conducted by the police stemmed, in part, from evidence gained in previous searches. Riedesel argues that the initial warrantless searches of his car's passenger compartment and trunk were unreasonable under the Fourth Amendment and that any evidence produced in those searches should therefore have been suppressed. He also asserts that evidence seized in subsequent searches should have been suppressed as the fruit of the poisonous tree. Accordingly, we will address the validity of the several searches in the order in which they occurred.

A. *Search of the Passenger Compartment.*

■ The "cardinal principle" in Fourth Amendment search and seizure jurisprudence is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnotes omitted)). When the government seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception. *See Mincey,* 437 U.S. at 391, 98 S.Ct. at 2412 (citing *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970)).

■ One exception to the warrant requirement allows the police to search a lawfully arrested individual's person and the immediately surrounding area. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). The rationales underlying this exception are the need to remove any weapons with which the arrestee might possibly harm the arresting officers or someone else and the need to prevent the concealment or destruction of evidence. *Id.*

The Supreme Court has applied this exception to the context of vehicle searches when an occupant has been arrested. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). In *Belton,* the Court fashioned a clearly-defined rule for such automobile searches: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* (footnotes omitted).

■ Riedesel does not contest that the police validly arrested him for driving with a suspended license. Rather, he contends that the search of his car's passenger compartment was unlawful because he was not an "occupant" of the automobile at the time of the arrest.

In *United States v. Fafowora,* 865 F.2d 360 (D.C.Cir.1989), federal Drug Enforcement Administration (DEA) agents pursued two men that they suspected were acting as lookouts for a drug transaction. The two men parked the vehicle that they had been driving. After exiting the vehicle, they walked approximately one car length away, where they were apprehended. The District of Columbia Circuit held that the police could not constitutionally search the passenger compartment of the vehicle as incident to the arrests because the men were not occupants of the vehicle at the time of their arrests. *Id.* at 362. The court reasoned that the rationales supporting searches incident to arrest were absent because the arrestees could no longer reach into the vehicle's passenger compartment when the DEA agents apprehended them.

On the other hand, the Seventh Circuit has defined "occupant" broadly to allow the search of a vehicle in a case in which the arrested individuals had exited the vehicle prior to their arrest. *United States v. Arango,* 879 F.2d 1501, 1506 (7th Cir.1989),

*cert. denied,* 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990). In *Arango,* a police officer recognized Arango as a suspect in a shooting investigation during a conversation that the officer and his partner had initiated after Arango and his companion Maldonado had exited the vehicle that they had been driving. Arango and Maldonado attempted to flee, shoving one officer to the ground and breaking his kneecap. After Arango was apprehended approximately a block away from the vehicle and placed under arrest for assaulting a police officer, the second officer took him back to the scene of the assault so that the second officer could provide medical attention to his partner. The second officer then searched Arango's person and the vehicle's passenger compartment, finding drugs and large amounts of cash.

The Seventh Circuit rejected Arango's argument that he was not an occupant of the vehicle at the time of his arrest and that the police had returned him to the vehicle in order to create a need to search it. *Id.* at 1506. The court reasoned that the arresting officer had a "legitimate reason and a pressing need" to return to the scene of the assault and that the police had not artificially created the justification for the search. *Id.* Thus, once Arango had been returned to the vehicle, the need to remove weapons from Arango's possible reach and to prevent the destruction of evidence authorized the search of the vehicle. *Id.*

We believe that, as in *Arango,* the circumstances of Riedesel's arrest justified the contemporaneous search of the passenger compartment of the car he had been driving. Officers Hayes and Hofbauer both observed Riedesel drive away from the initial encounter. A few minutes later, Hayes observed Riedesel's car in the Holiday gas station and saw Riedesel walking from the station toward his car. Officer Hayes then met Riedesel at his car and the two men stood close to the driver's door until Officer Hofbauer arrived and placed

Riedesel under arrest. In addition to having very recently driven the car and having been immediately next to the car at the time of his arrest, Riedesel thereafter asked of his own accord to enter his car to lock the doors. The arresting officers were not required to allow Riedesel access to his car once they had arrested him, and there is no evidence that they granted his request as a ruse to gain access to the vehicle. To the contrary, Officer Hofbauer testified that he felt he was "being decent" to Riedesel by allowing him to secure his car. Once Riedesel had fully entered the interior of his car in the course of his arrest, the passenger compartment became the area within his control as defined in *Belton.* *See* 453 U.S. at 460, 101 S.Ct. at 2864. Officers Hofbauer and Hayes were therefore justified in subsequently searching the passenger compartment to protect themselves and to prevent the destruction of evidence.[3]

## B. *Search of the Trunk.*

The officers' search of the trunk does not fall within the scope of a search incident to arrest. *See Belton,* 453 U.S. at 460 n. 4, 101 S.Ct. at 2864 n. 4 (holding encompasses only passenger compartment and not trunk of automobile). The warrantless search of the trunk of Riedesel's car may, however, qualify as a lawful warrantless search under the "automobile exception" to the warrant requirement if the officers had probable cause to believe that the trunk contained contraband or other evidence of a crime before they began to search it. *United States v. Thompson,* 906 F.2d 1292, 1298 (8th Cir.), *cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990); *see also Carroll v. United States,* 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925) (creating the exception); *California v. Acevedo,* —— U.S. ——, ——–——, 111 S.Ct. 1982, 1985–87, 114 L.Ed.2d 619 (1991) (discussing the development of the automobile exception).

---

**3.** Because the district court upheld the search of the passenger compartment as a search incident to arrest, it did not address the government's claim that Officer Hofbauer had observed the

first cellophane package of marijuana in plain view on the front seat. Likewise, we do not reach the question whether the search was justified on that basis.

■ Having determined that the officers were lawfully inside the interior of Riedesel's car, we believe that they developed probable cause to search the car's trunk. The officers legally discovered substantial quantities of marijuana and what they believed to be methamphetamine in the passenger compartment of the car. *See United States v. Thompson,* 906 F.2d at 1298 (discovery of loaded pistols and police scanner in passenger compartment helped provide probable cause to support warrantless search of trunk under automobile exception); *United States v. Orozco,* 715 F.2d 158, 160 (5th Cir.1983) (discovery of marijuana in plain view in glove compartment supported warrantless search of trunk). They were aware that Riedesel had been tied to the growing and manufacture of drugs by the search of his residence several months earlier. Moreover, Officer Hofbauer had initially come into contact with Riedesel as he was sleeping in a running car that was parked in an unusual location in the early morning hours of the day.

We agree with the district court that the sum of these facts, especially the presence of a substantial quantity of drugs, supports a commonsense conclusion that there was a fair probability that Riedesel may have hidden additional drugs in other parts of the automobile. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (defining probable cause as the "practical, common-sense decision whether, given all the circumstances ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place"). Accordingly, we conclude that the officers had probable cause to search the remainder of Riedesel's automobile, including the trunk, and to seize the safe found therein.

## C. *First Search of Riedesel's Trailer House.*

Riedesel presents two arguments that the first search of his trailer house was unconstitutional. Initially, he claims that the Webster County judicial magistrate issued the warrant on the basis of evidence illegally obtained from searches of his car, thereby rendering the evidence seized from his house the fruit of the poisonous tree. Our determination that the searches of Riedesel's automobile were lawful disposes of this argument.

■ Riedesel's second argument is that the first search warrant for his house was not supported by probable cause, even if the magistrate could properly have considered the drugs and safe seized from his car. He asserts that the police had observed no connection between his trailer house and the drugs found in his car in the early morning hours of October 1, 1991. He states that the police never observed him leaving or arriving at his house on that date or discovered anything in the search of his car that would suggest that he kept drugs or other evidence of a crime at his residence. He argues that the only possible link between his trailer and drugs grew out of the March 15, 1991 search. He asserts that any evidence produced from the March 15th search was stale as of October 1 and could not support the magistrate's probable cause determination at that time.

■ In making a determination concerning the existence of probable cause, the magistrate's task is to decide whether the information in the affidavit accompanying the application presents sufficient facts to justify a prudent person in the belief that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *see also United States v. Reivich,* 793 F.2d 957, 959 (8th Cir.1986). "A determination whether probable cause has been established involves a 'practical, common sense' evaluation of the 'totality of the circumstances' " as they have been presented in the information before the issuing judicial officer at the time. *Reivich,* 793 F.2d at 959 (citing *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332). In reviewing the issuance of a warrant, the reviewing court should not make a de novo determination of probable cause, but should uphold the decision to issue the warrant if it is supported by substantial evidence in the record. *Id.* (citing *Massachusetts v. Upton,* 466 U.S. 727, 728, 104 S.Ct. 2085, 2086, 80 L.Ed.2d 721 (1984) (per curiam)).

In this case, the district court did not make a finding whether the Webster County magistrate had a substantial basis for deciding that probable cause existed to search Riedesel's trailer. The district court adopted the magistrate judge's report, which stated that the first search warrant may not have been supported by probable cause. The district court, however, also adopted the magistrate judge's conclusion that the items seized during the first search of the trailer should not be suppressed because the police officers had relied on the sufficiency of the warrant in good faith. *See United States v. Leon,* 468 U.S. 897, 920–21, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984).

In *Leon,* the Supreme Court held that evidence obtained pursuant to an ultimately invalidated search warrant should not be excluded where the officers executed the warrant with an objectively reasonable reliance on the magistrate's determination of probable cause. 468 U.S. at 922, 104 S.Ct. at 3420; *see also United States v. Simpkins,* 914 F.2d 1054, 1057 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 997, 112 L.Ed.2d 1081 (1991); *United States v. White,* 890 F.2d 1413, 1419 (8th Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990). The Court recognized four situations in which the executing officers could not reasonably rely on the warrant and suppression therefore remained an appropriate remedy: (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing officer "wholly abandoned his judicial role;" (3) where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid. *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421 (citations omitted); *see also Simpkins,* 914 F.2d at 1057.

█ In this case, Riedesel's only possible challenge to the officers' reliance on the warrant arises from a claim that the affidavit was so lacking in indicia of probable cause as to his trailer that no objectively reasonable officer could agree with the magistrate's conclusion. The district court rejected this argument. Because this is a mixed question of law and fact, we review the district court's determination de novo. *Simpkins,* 914 F.2d at 1057–58. Considering the totality of the circumstances, we believe that the affidavit was not so lacking in indicia of probable cause as to render any reliance on the warrant objectively unreasonable.

As described earlier, the affidavit accompanying the search warrant application presented the following information to the issuing magistrate: (1) the presence of substantial quantities of drugs found in Riedesel's car on October 1st; (2) the large amount of cash ($2600) found on Riedesel's person at his arrest, which is consistent with drug trafficking; and (3) the results of the search of Riedesel's trailer on March 15, 1991 (drugs, drug paraphernalia, and several guns). Although the length of time that had passed since the March 15th search may have rendered stale the items seized in that search for purposes of determining probable cause to believe that the trailer contained drugs on October 1, we cannot say that the executing officers could not reasonably have relied on the magistrate's determination that the sum total of all the information presented to him established probable cause to search the trailer. Indeed, in reviewing the issuance of the warrant, the magistrate judge and the district court were willing to state only that the warrant *may not have been* supported by probable cause. The affidavit was not so deficient in content, then, that the officers could not have relied on the neutral, detached magistrate's determination of the issue. Having obtained a search warrant, there was nothing more for the police officers to do to comply with the law. *See Leon,* 468 U.S. at 921, 104 S.Ct. at 3419 (citing *Stone v. Powell,* 428 U.S. 465, 498, 96 S.Ct. 3037, 3054, 49 L.Ed.2d 1067 (1976) (Burger, C.J., concurring)).

## D. *Search of the Safe.*

█ Once the officers discovered the three packages of drugs in the passenger

compartment, they had probable cause to search the remainder of the automobile. This probable cause allowed them to search every part of the vehicle and any containers therein that could have concealed the object of the officer's search, namely, more drugs. *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982); *see also United States v. Eisenberg,* 807 F.2d 1446, 1452 (8th Cir.1986). Because the safe in the trunk certainly was large enough to contain more drugs, the officers could have immediately opened it during their search. They also could have opened it later at the station, as they indeed did. *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970) (holding that if police have probable cause to justify a warrantless search of an automobile, it is reasonable under the Fourth Amendment for them to conduct either an immediate or a delayed search of the automobile). Consequently, the officers' prudent decision to obtain a search warrant for the safe was unnecessary, although the valid search warrant also authorized their search of the safe. Thus, we hold that the district court properly denied the motion to suppress the package of cocaine found in the safe.

E. *Second Search of Riedesel's Trailer.*

 It was also unnecessary for the officers to obtain a second search warrant for Riedesel's trailer, because they had viewed the shotgun barrel and acetone—potential evidence of Riedesel's drug trafficking—in plain view during their initial search of the trailer. *See Texas v. Brown,* 460 U.S. 730, 738 & n. 4, 103 S.Ct. 1535, 1541 & n. 4, 75 L.Ed.2d 502 (1983) ("plain view" provides grounds for seizure of an item when an officer's access to the object has some prior justification under the Fourth Amendment, such as executing a search warrant). Nonetheless, we find that the warrant was supported by probable cause and properly issued. Thus, the district court correctly denied Riedesel's motion to suppress this evidence.

### III.

To summarize, we hold that the search of the passenger compartment of Riedesel's

car was justified as a valid search incident to Riedesel's arrest and entry into the car. The discovery of drugs in the interior of the car gave the officers probable cause to search the remainder of the car and any containers therein that could contain additional drugs. Thus, the seizure and subsequent search of the safe were lawful. The officers executing the first warrant for Riedesel's trailer relied in good faith upon the magistrate's determination of probable cause, and therefore the items seized during that search were properly not suppressed. Finally, we hold that the police could have lawfully seized the shotgun barrel and acetone during their initial search of the trailer and were justified in returning to the trailer to seize those items after they had obtained a second search warrant for the trailer.

The judgment is affirmed.