# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-3979

_____

| | |
|---|---|
| United States of America, | * |
| | * |
|         Appellant, | * |
| | *  Appeal from the United States |
|    v. | *  District Court for the |
| | *  Eastern District of Arkansas. |
| Richard Charles Berry; Rhonda | * |
| Sue Berry, * | |
| | * |
|         Appellees. | * |

_____

Submitted:  April 17, 1997

Filed: May 6, 1997

_____

Before BOWMAN, HANSEN, and MURPHY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The United States appeals from the decision of the District Court granting the appellees' motion to suppress.  We reverse and remand.

Richard Charles Berry and his wife, Rhonda Sue Berry, of North Little Rock, Arkansas, were indicted in April 1996 by a federal grand jury on charges of conspiring to distribute marijuana and to possess marijuana with intent to distribute, and possessing marijuana with intent to distribute. See 18 U.S.C. §§ 841, 846 (1994).  The indictments arose from the seizure, pursuant to a search warrant, of a large quantity of marijuana from a pickup truck parked at the Berrys' address and from the Berrys' residence.

In October 1994, a person who claimed to have been working as a courier for the Berrys and for their alleged co-conspirators, ferrying marijuana from Houston, Texas, to Little Rock, contacted the narcotics unit of the Little Rock Police Department (LRPD) to report his illegal activities. The courier became a confidential informant and on October 27, 1994, he advised Joe Cook, a detective with the LRPD, that a Ford flatbed pickup truck equipped with a secret compartment and used for transporting marijuana was parked at the Berrys' residence. Cook knew that the truck had not been there earlier in the day. Police surveillance of the residence was set up at 3:00 p.m. and continued into the night, as a number of persons visited the residence for short periods of time. At 12:30 a.m. on October 28, 1994, Cook took a search warrant application and supporting affidavit that he had prepared to the home of a Little Rock municipal judge, who attested to Cook's signature on the affidavit and authorized the warrant. Officers from the LRPD (including Cook), the North Little Rock Police Department, the state police, and the federal Drug Enforcement Administration executed the warrant forty-five minutes later, at approximately 1:15 a.m.

The Berrys moved to suppress the marijuana discovered and seized during the course of the search, alleging several grounds. After a hearing, the District Court granted the motion, holding that the warrant on its face authorized a night search of only a very limited area, an area where no contraband was found. The court ordered the evidence suppressed, and the government appeals.

"We may reverse a suppression order not only if it rests on clearly erroneous findings of fact, but also 'if the ruling reflects an erroneous view of the applicable law.'" United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) (quoting United States v. Riedesel, 987 F.2d 1383, 1388 (8th Cir. 1993)).

In the affidavit in support of the warrant, Cook stated that the Berrys' residence "is located on a small dead end street and that the approach of officers in daylight hours would be readily apparent to persons in or around the residence."  Affidavit for Search and Seizure Warrant ¶ 9.  Therefore, Cook continued, "for the safety of the serving officers and for the protection of the evidence sought, the search and seizure warrant can only be safely and successfully executed under the cover of darkness."  Id.  Cook then asked that a warrant "be issued for a search of the residence, curtilage and vehicles located at [the Berrys' address],[1] and that said warrant be issued for a search of the residence anytime of the day or night."  Id. (footnote added).

The operative language in the actual warrant, however, does not track the language in the affidavit.  The warrant directs officers to search "[t]he residence, curtilage and vehicles" at the Berrys' address for various items related to the Berrys' distribution of marijuana, to seize and store the evidence, and to make a return of the warrant.  No mention is made of the time at which the search was to have been executed.  Then, for reasons unknown (the only explanation that has been offered is a possible word processing glitch), the warrant wraps up with this paragraph: "Having found reasonable cause to believe that the said evidence described herein will be found, you are hereby commanded to search the storage room located off the carport of the residence located at [the Berrys' address] anytime of the day or night."  On its face, the warrant does not authorize a night search of any other structures or any vehicles on the property.

---

[1]The Berrys in their motion to suppress challenged the accuracy of the address used in the affidavit and warrant, but the District Court rejected that ground for suppression during the hearing.  The Berrys have not cross-appealed that decision.

-3-

In its order, the District Court held that 21 U.S.C. § 879 (1994) applies to this warrant, and we agree. See Gooding v. United States, 416 U.S. 430, 439 (1974). Section 879 reads:

> A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

The court concluded that the evidence should be suppressed because the warrant's language did not specifically authorize a night search of the premises. We hold that it was not required to.

For search warrants that do not involve controlled substances, night searches are governed by Federal Rule of Criminal Procedure 41(c)(1): "The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." Given the similarities in the language of the rule and of the statute, we believe our cases interpreting Rule 41(c)(1) are relevant here, even though the search at issue was made pursuant to § 879.

We have held that night searches are not per se unconstitutional and thus "suppression is not automatic" if Rule 41(c)(1) is violated. United States v. Schoenheit, 856 F.2d 74, 77 (8th Cir. 1988). Instead, we consider whether the "defendant is prejudiced or reckless disregard of proper procedure is evident." United States v. Bieri, 21 F.3d 811, 816 (8th Cir.), cert. denied, 513 U.S. 878 (1994); see also United States v. Freeman, 897 F.2d 346, 349-50 (8th Cir. 1990) (concluding that "nonfundamental" Rule 41 violations, where there is neither prejudice nor reckless disregard, do not require suppression); Schoenheit, 856 F.2d at 77

("the prejudicial error test controls").  Thus we consider whether the night search prejudiced the defendants or whether there was reckless disregard of the proper procedure for a night search by the officials involved.  If so, then the search is unconstitutional and the fruits of the search must be suppressed.

In Bieri, the Court applied the prejudice portion of the test to the facts of that case, where a night search had been executed without "appropriate provision in the warrant," Fed. R. Crim. P. 41(c)(1), and held that "the warrant was not unconstitutional and the [defendants] suffered no prejudice because authorization for a night search does not need to be listed on the warrant."  Bieri, 21 F.3d at 816.  Surely, if this is the law as to night searches in violation of Rule 41(c)(1), then it applies with equal force to alleged § 879 violations, where the plain language of the statute does not even require "appropriate provision in the warrant."  We hold that the Berrys suffered no prejudice from the search.

Further, there was no "reckless disregard of proper procedure."  We think it safe to say that Cook, who prepared the affidavit and the warrant application, did not go to a judge's home at 12:30 in the morning for authorization with the idea that he would execute the warrant the next day, or on some later day.  Cook obviously felt some exigency, and when he participated in the search forty-five minutes later, he and his colleagues clearly believed Cook had sought and received authority for a night search. We hold that they did not act in bad faith, and therefore did not act in reckless disregard of proper procedure.  See id. ("because no evidence exists that the officers acted in bad faith, it follows that there was no reckless disregard of proper procedure").

Even if we are mistaken about the application of the exclusionary rule to the alleged violation of § 879, and such

-5-

violation is in reality of constitutional magnitude, the decision to suppress nevertheless may be reversed if the searching officers acted in good faith in executing the warrant. See United States v. Leon, 468 U.S. 897, 922 (1984) (announcing good-faith exception to exclusionary rule if executing officers' reliance on invalid search warrant is "objectively reasonable"); see also Massachusetts v. Sheppard, 468 U.S. 981 (1984) (applying good-faith exception where officer and issuing judge believed warrant authorized search for murder evidence, but on its face it authorized search for drug evidence). The District Court concluded that it was not objectively reasonable for Cook and the other searching officers to rely on the warrant where it so plainly authorized a night search for only a limited area, and therefore held that the good-faith exception did not apply. We review de novo. See LaMorie, 100 F.3d at 555.

It is apparent to us that the wording of the concluding paragraph in the warrant was the result of some sort of clerical error, and that the language remained in the warrant as it ultimately was authorized and executed because of the inattention of Cook and the issuing judge. We know this from examining the affidavit, which clearly anticipated a night search of all areas, and the first part of the warrant, where all areas to be searched are listed. Notably, no mention is made of a "storage room located off the carport" anywhere in the affidavit (which is more than five pages long and mentions numerous times the Ford flatbed truck where the bulk of the marijuana was found) or in the first page of the warrant. That area is not specifically identified at all until the second page and final few lines of the warrant. Moreover, Cook not only prepared the affidavit and the warrant, with the knowledge that he was seeking authority for a night search of the entire premises, but he also participated in executing the warrant. "This fact is significant because in assessing whether reliance on a

search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed." United States v. Curry, 911 F.2d 72, 78 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991). Given the circumstances of the warrant's preparation and authorization, we have no difficulty in concluding that Cook reasonably believed he had authority for a night search of all areas listed in the affidavit. In addition, it is important to recall here that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges." Leon, 468 U.S. at 916. The municipal judge signed both the affidavit and the warrant and, as the final reviewing authority, he must shoulder the ultimate responsibility for the clerical error in the warrant. See Curry, 911 F.2d at 78. Thus, the purpose of the exclusionary rule is not served by suppression of the evidence seized pursuant to the search at the Berrys' address. See id.

We conclude that it was objectively reasonable for Cook and the other executing officers to believe that they had authority for a night search. Therefore, even if the search were unconstitutional, the evidence would be admissible under the good-faith exception to the exclusionary rule.

The order granting the Berrys' motion to suppress is reversed, and the case is remanded to the District Court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT

-7-