**UNITED STATES of America,
Plaintiff,**

v.

**Adrin RANDLE, Defendant.**

No. 99–50039.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 31, 1999.

James C. Mitchell, U.S. Attorney's Office, Bay City, MI, for U.S.

David W. Wright, Bloomfield Hills, MI, Kenneth R. Sasse, Federal Defender Office, Flint, MI, for Defendant.

*MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE*

GADOLA, District Judge.

Presently before the Court is a motion to suppress evidence filed by defendant Adrin Randle on June 8, 1999. Defendant is charged in a one-count indictment with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The government responded to the instant motion on June 23, 1999. No reply brief has been filed by defendant. An evidentiary hearing was conducted on August 16, 1999, the Honorable Paul V. Gadola, presiding.

For the reasons set forth below, the Court will deny defendant's motion to suppress evidence.

## I. Factual Background

On Sunday, March 14, 1999 at 12:29 a.m., defendant was stopped for speeding by police officer Lyle Lindemulder of the Bath Township Police Department. Defendant had been traveling 90 miles per hour in a 70 mile per hour zone on eastbound I–69 in Clinton County, Michigan. At the hearing held August 16, 1999, defendant testified that he does not dispute the fact that he was speeding before being stopped by the police officer.

After stopping defendant, Officer Lindemulder ran defendant's name through the Law Enforcement Information Network (LEIN). From this check, Officer Lindemulder learned of an outstanding traffic warrant for defendant's arrest out of Genesee County, State of Michigan. Defendant was then approached by the officer, informed of the outstanding arrest warrant, and asked if he would be willing to pay $100 in order to "bond out."[1]

From this point in time, the factual accounts of the parties diverge. Defendant claims not to have known about the arrest warrant. Defendant further testified that he gave Officer Lindemulder $100 after the officer offered defendant the option of "bonding out." This assertion is flatly contradicted by the officer's testimony. In

---

1. "Bond out" is a term used to describe an informal procedure practiced by some police departments whereby an individual is arrested on an outstanding warrant, usually for some misdemeanor offense such as a traffic violation, thereafter to be given an interim bond receipt and released following payment of a cash bond to the arresting police officer. This procedure alleviates the need for the officer to transport the arrestee to the police station for processing.

response to questions from the Court, defendant had no recollection of the denominations of currency allegedly given to Officer Lindemulder.

According to the police officer, defendant was told that he was "under arrest," then subjected to a pat-down frisk, and placed into the locked backseat of the police car. Defendant, however, denies that he was told he was under arrest at that time. Defendant also denies being searched by the officer before entering into the police car. He does concede, however, that he did enter the backseat of the police car after being informed that Officer Lindemulder had ascertained that he was the subject of an outstanding arrest warrant issued by a state of Michigan court in Genesee County. It is also undisputed that an occupant of the backseat of the police car cannot open the door of the vehicle and exit therefrom, and is therefore effectively restrained and deprived of his opportunity to depart.

Officer Lindemulder testified that he realized when he entered the police car that he did not have any interim bond receipts. As a result, according to the officer, defendant was told that he would be transported to "my office," meaning the police station located only a short distance away. The passenger who had been riding with defendant was also allegedly informed that he could drive defendant's vehicle to the police station.

Defendant, on the other hand, testified that once inside the police vehicle Officer Lindemulder sat in the front seat and began filling out some "forms." According to defendant, these forms consisted of the interim bond receipt and the traffic citation for speeding. In response to further questioning from the Court, defendant admitted that he could not see all the writing on the forms. Defendant believes that one

form contained the word "bond," and the other, the word "citation."

There is no dispute that after placing defendant in the police vehicle the officer performed a search of the passenger compartment of defendant's car. There is also no dispute that the search revealed a large quantity of marijuana in a blue duffel bag found in the back seat. A subsequent search of the trunk resulted in discovery of an additional large quantity of marijuana contained in a black duffel bag. A Michigan State Police Crime Laboratory Report lists the total weight of the marijuana as 56.01 kilograms or approximately 123 pounds.

## II. Analysis

■ At the outset, it is important to note that the parties are in agreement that a police officer may conduct a full search of the passenger compartment of a vehicle incident to a valid arrest pursuant to the Supreme Court's ruling in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In *Belton*, the Court set forth the following bright-line rule:

> when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

*Id.* at 460, 101 S.Ct. 2860. The term "passenger compartment" has been construed by subsequent courts as meaning all areas reachable without exiting the vehicle. *See United States v. Russell*, 670 F.2d 323, 326 (D.C.Cir.1982). Thus, the back seat of defendant's vehicle would be included within the meaning of the term "passenger compartment." However, the *Belton* Court further made clear that its "holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk." *Belton*, 453 U.S. at 461 n. 4, 101 S.Ct. 2860.[2]

---

2. The police officer's search of the trunk in the instant case therefore does not fall within the scope of a *Belton* search incident to arrest. The warrantless search of the trunk of

defendant's car may, however, qualify as a lawful warrantless search under the so-called "automobile exception" to the warrant requirement. *See United States v. Riedesel*, 987

Defendant argues that there was no custodial arrest in the case at bar because defendant was prepared to "bond out" by depositing $100 with the police officer and receiving the interim bond receipt. This argument is made in spite of the fact that defendant had been taken into custody and placed in the backseat of the police vehicle. In support of his position, defendant cites *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998).

In *Knowles*, an Iowa police officer stopped defendant for speeding, and issued him a citation instead of arresting him. *See* 119 S.Ct. at 486. The United States Supreme Court addressed the question whether the officer was authorized under such circumstances to conduct a full search of defendant's car. The Court concluded that a full search was not authorized pursuant to the Fourth Amendment. *See id.* Thus, the Court refused to extend *Belton*'s bright-line rule to situations where defendant was only given a citation, and not arrested. *Id.* at 488.

The government points out that while the Supreme Court in *Knowles* rejected a new "search incident to citation" rule, it at the same time re-affirmed the viability of the "search incident to arrest" rule. The defendant in *Knowles* was not arrested until the search revealed marijuana and associated paraphernalia. *See id.* at 486. In the case at bar, the government argues that defendant was arrested pursuant to a valid arrest warrant and placed into the rear of the police vehicle *before* the police officer searched defendant's car. According to the government, the fact of the arrest is controlling and it is immaterial that defendant stated a willingness to "bond out."

The Court finds that the mere fact that defendant stated his desire to post the $100 cash bond does not negate the fact that he was under arrest at the time of the search. The Court is very dubious of defendant's testimony that he had already deposited the $100 cash bond with the officer before being placed in the police vehicle. This testimony was flatly contradicted by Officer Lindemulder and flies in the face of common sense. Moreover, as mentioned above, defendant is not able to identify the denominations of currency allegedly given to the officer on the night in question.

The Court further finds it less than credible that defendant, while in the backseat of the police vehicle, could have discerned the writing on the "forms" which Officer Lindemulder allegedly was filling out. The officer testified that he did not have any bond receipts and realized after placing defendant in the police vehicle that he would have to go back to "his office" in order to retrieve them.

Even assuming *arguendo* defendant had paid the $100 to Officer Lindemulder, defendant had not yet received the interim bond receipt and had not yet been released from custody. Moreover, the officer testified that his usual practice was to routinely place subjects in the backseat of his police cruiser after an arrest *before* allowing them to "bond out." This was his practice even when he had receipts available. Accordingly, defendant would have been placed under arrest and thus subject to a search incident to that arrest, whether or not he had already paid the $100 and whether or not a bond receipt had been provided to him.

---

F.2d 1383, 1389 (8th Cir.1993). *See* discussion, *infra*. The "automobile exception" applies if a police officer had probable cause to believe that the trunk contained contraband or other evidence of a crime before beginning his search of it. *Id.; see also United States v. Thompson*, 906 F.2d 1292, 1298 (8th Cir.), *cert. denied*, 498 U.S. 989, 111 S.Ct. 530, 112

L.Ed.2d 540 (1990); *see also Carroll v. United States*, 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925) (creating the exception); *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 1985–87, 114 L.Ed.2d 619 (1991) (discussing the development of the automobile exception).

■ It is well-settled that to constitute an "arrest" all that is required "is some act by the officer which indicates his intention to detain or to take a person into custody, thereby subjecting that person to the actual control and will of the officer. No formal declaration of arrest is required." *Commonwealth of Pennsylvania v. Brown*, 230 Pa.Super. 214, 218, 326 A.2d 906 (1974) (citing 5 Am.Jur.2d Arrest § 1 (1962)). The Court finds that defendant was thus clearly under arrest under the outstanding Genesee County arrest warrant prior to the time that the officer conducted the search of defendant's vehicle.

■ The remaining issue concerns the propriety of the search of the *trunk* of defendant's car. As discussed above, the search of the trunk cannot be justified as a search incident to arrest under the *Belton* rule. However, a warrantless search of the trunk may be justified under the so-called "automobile exception" to the warrant requirement. The "automobile exception" applies if a police officer had probable cause to believe that the trunk contained contraband or other evidence of a crime before beginning his search of it. *See United States v. Thompson*, 906 F.2d 1292, 1298 (8th Cir.), *cert. denied*, 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990); *see also Carroll v. United States*, 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925) (creating the exception); *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 1985–87, 114 L.Ed.2d 619 (1991) (discussing the development of the automobile exception).

Applying these rules to the case at bar, the police officer's search of defendant's trunk *after* finding a large quantity of marijuana in a blue duffel bag in the backseat is justified under the automobile exception. The marijuana found previous to the search of the trunk provided the officer with probable cause to believe that the trunk contained contraband or other evidence of a crime. The crucial requirement of probable cause was satisfied.

In *United States v. Riedesel*, 987 F.2d 1383 (8th Cir.1993), the defendant was arrested for driving with a suspended license. *Id.* at 1386. After being handcuffed and placed in a squad car, the officers searched the interior of defendant's car. *Id.* They found two packages, one containing marijuana and the other containing what appeared to be methamphetamine. *Id.* Thereafter, the officers obtained keys to defendant's car, searched the trunk, and found a "stowaway safe." *Id.* The court determined that the search of the trunk was justified under the "automobile exception," specifically holding that

> the sum of these facts, especially the presence of a substantial quantity of drugs, supports a commonsense conclusion that there was a fair probability that Riedesel may have hidden additional drugs in other parts of the automobile. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (defining probable cause as the "practical, common-sense decision whether, given all the circumstances . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place"). Accordingly, we conclude that the officers had probable cause to search the remainder of Riedesel's automobile, including the trunk, and to seize the safe found therein.

*Id.* at 1390.

■ At the conclusion of the evidentiary hearing and during oral argument, defense counsel placed great emphasis on the fact that the marijuana was found in "closed containers," i.e., in two closed duffel bags. Counsel implied that there was some impropriety in Officer Lindemulder's search of the closed bags found both in the backseat and trunk of defendant's vehicle. Counsel, however, presented no case authority for this position.

In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Supreme Court addressed this very issue

of whether a police officer while involved in a legitimate search of a stopped vehicle may open closed containers found therein. The Court pronounced the following rule:

[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. *A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search.* When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*Id.* at 820, 102 S.Ct. 2157 (footnotes omitted) (emphasis added). The Court, nevertheless, placed certain limitations on the scope of the so-called "container rule:"

[t]he scope of a warrantless search of an automobile ... is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that

a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab. *Id.* at 824, 102 S.Ct. 2157.

Applying the container rule, the Court finds that Officer Lindemulder was justified in opening the duffelbags. The search of the first duffelbag found in the backseat was entirely proper because it was large enough to conceal weapons. Once the first duffelbag had been opened, revealing the large quantity of marijuana, the officer then had probable cause under the "automobile exception" to believe that more contraband would be found in defendant's trunk. Upon opening the trunk and finding the second duffelbag, the officer was justified in opening that duffelbag because it was certainly large enough to contain further contraband pursuant to the Supreme Court's ruling in *Ross.*

In light of the foregoing considerations, the Court holds that the search of the backseat of defendant's car was justified under the *Belton* search incident to arrest rule. In addition, the Court holds that the search of the trunk of defendant's car was also permissible pursuant to the "automobile exception" to the warrant requirement. Just as in *Riedesel,* the presence of a substantial quantity of drugs in defendant's car provided the officer with probable cause to search the trunk of the same vehicle. There was certainly a "fair probability" that defendant had hidden additional drugs in the trunk of his car. *See Riedesel,* 987 F.2d at 1389-90; *see also United States v. Thompson,* 906 F.2d at 1298 (discovery of loaded pistols and police scanner in passenger compartment helped provide probable cause to support warrantless search of trunk under automobile exception); *United States v. Orozco,* 715 F.2d 158, 160 (5th Cir.1983) (discovery of marijuana in plain view in glove compartment supported warrantless search of trunk). Finally, as discussed, the opening of the closed duffelbags was proper pursuant to the Supreme Court's decision in *United States v. Ross, supra.*

Accordingly, the Court will deny defendant's motion to suppress evidence.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant Adrin Randle's motion to suppress evidence filed on June 8, 1999 is **DENIED.**

**SO ORDERED.**