In the

# United States Court of Appeals

### For the Seventh Circuit

No. 05-2542

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRIAN L. HINES,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 04 CR 10014—**Joe Billy McDade**, *Judge*.

ARGUED DECEMBER 9, 2005—DECIDED JUNE 5, 2006

Before FLAUM, *Chief Judge*, and RIPPLE and WILLIAMS, *Circuit Judges*.

RIPPLE, *Circuit Judge.* On February 18, 2004, a grand jury sitting in the Central District of Illinois returned a two-count indictment charging Brian Hines with bank fraud. *See* 18 U.S.C. § 1344. Mr. Hines subsequently filed a motion to suppress evidence seized from his vehicle, which included false forms of identification that led to an investigation of his financial activities. After the district court denied this motion, Mr. Hines, while reserving the right to appeal the district court's denial of his motion to suppress, *see* Fed. R.

Crim. P. 11(a)(2), pleaded guilty to both counts. The district court sentenced him to concurrent terms of 37 months' imprisonment on each count, followed by concurrent terms of five years' supervised release. The district court also imposed a restitution obligation of $40,150.64.

Mr. Hines now appeals. He submits that the search of his vehicle and the seizure of his false identification found in the vehicle were unreasonable. He also contends that the district court erred in placing on him the burden to produce evidence that a two-level sentencing enhancement for use of false identification to obtain another means of identification was improper. *See* U.S.S.G. § 2B1.1(b)(10) (C)(i). For the reasons set forth in the following opinion, we uphold the search of Mr. Hines' vehicle as supported by probable cause, but remand for resentencing in light of the district court's misallocation of the burden of proof on the sentencing enhancement.

# I

# BACKGROUND

## A. Facts

On December 29, 2003, FBI Special Agent Nicholas Zambeck received a phone call from the United States Probation Office, advising him that, according to customs officials in Buffalo, New York, Mr. Hines had crossed the border from Canada to New York the previous day. Mr. Hines was under supervised release at the time as a result of a prior conviction for possession of a firearm; leaving the United States without permission constituted a violation of the terms of his release. According to customs officials, Mr. Hines used a fake Ohio driver's license, bearing the

name "Huthiafa Abdul-Hakeem," to cross the border. He was traveling in a dark blue van with Illinois license plates.

For three days after receiving the call, the FBI placed Mr. Hines' two known residences in Peoria, Illinois, under surveillance. On the afternoon of the third day, Agent Zambeck, Agent Kerry Meyer and others arrived at one of Mr. Hines' residences. They found the house dark and the driveway empty. The agents' testimony varies on what happened next: Agent Zambeck testified at the hearing on the motion to suppress that, mid-afternoon, he and Agent Meyer left the Hines' residence to "link up with the other [United States] marshals that were assisting [them]" at a nearby intersection. R.32 at 10. He claims that they returned to the Hines' residence within "two or three minutes." *Id.* Agent Meyer, by contrast, testified at a revocation hearing that, although he and Agent Zambeck had been outside Mr. Hines' residence for "most of the afternoon," they "took a break [in the late afternoon], came back to [their] office in Peoria, [and] went to get something to eat"—a chain of events that presumably took more than two or three minutes. R.7, Ex.1 at 12-13.

When the agents and United States deputy marshals returned to the Hines residence after these events, they noticed a dark blue Chevrolet Suburban, whose exterior and license plates matched the description of the van reportedly used to cross the Canadian border two days prior, parked in the driveway. Its "side doors were ajar" and it was "backed in adjacent to [the residence]," giving the impression that it was being unloaded—although no one was outside. R.32 at 10 (Zambeck Test.). Agent Zambeck and Deputy Marshal Tim McFarden then approached the house, announced that they had a warrant for Mr. Hines' arrest and spoke with Mr. Hines' wife, who claimed that she did not know where her

husband was. Agents Zambeck and McFarden then con-
ducted a room-by-room search. In the bedroom, they
noticed car keys on the upper bunk bed, below an attic
hatch-door. Believing Mr. Hines to be hiding in the attic,
they made known that they "were going to go back and get
the dog to bring into the house." *Id.* at 13-14. Mr. Hines then
revealed himself. While still in the home, he was arrested,
handcuffed and searched on the authority of a warrant
previously issued by the district court for violation of the
terms of his supervised release.[1] Escorted by Agents
Zambeck and McFarden, Mr. Hines then was led down-
stairs, out the front door and past the blue van to the police
car. He was secured in the back seat of the police car.

When he walked by the van on his way to the squad car,
Agent Zambeck, shining a "light into the front driver's
side compartment," noticed a six- to eight-inch hatchet lying
on the floorboard of the vehicle. *Id.* at 18. He requested Mr.
Hines' consent to search the van; Mr. Hines refused,
claiming that the item was merely an engraved trophy, not
a hatchet. Agent Zambeck then called an Assistant United
States Attorney to discuss the lawfulness of searching the
vehicle; the attorney told him it would be best to impound
the vehicle, inventory its contents and later obtain a search
warrant for a more complete investigation. This plan was
conveyed to Mr. Hines. Concerned that his wife would be
without a vehicle if the van was impounded, Mr. Hines
agreed to a search of the vehicle and signed a written

---

[1] For this violation, Mr. Hines' term of supervised release was
revoked and, on March 24, 2004, he was sentenced to 24 months'
imprisonment. The validity of this sentence is not in question
on appeal.

consent form.[2]

The agents searched the van in Mr. Hines' presence. They found and seized the hatchet; a notary stamp; an embossing tool that reads, "Seal of Cook County Illinois"; and a brown wallet containing the fake Ohio driver's license. *See* R.8, Def.'s Ex.3 at 1. The car was not impounded.

The false driver's license led to a larger investigation into Mr. Hines' use of the alias, "Huthiafa Abdul-Hakeem." The police ultimately discovered that Mr. Hines had used this alias, and the fake Ohio driver's license in that name, to obtain two loans from Citizen Equity Federal Credit Union ("CEFCU"). The first loan was in the amount of $200 for the purchase of a computer; the second was in the amount of $46,102 for the purchase of a car. According to a CEFCU official with whom the Government spoke, the alias played a dispositive role in the decision to loan money to Mr.

---

[2] The agents apparently planned to leave the vehicle for Mr. Hines' wife's use before they saw the hatchet in the car. They had given her the keys. But, when they saw the hatchet, the agents admit that they used the possibility of depriving the wife of a car to encourage Mr. Hines to consent to a search:

> Q:  Was there some discussion about the vehicle being unavailable to his wife for use at that point in time?
>
> A:  Yes, there was.
>
> Q:  Can you relate to us what that was?
>
> A:  Merely that I told him that the vehicle would be impounded and that, in fact, he would not have access to it, implying that nobody else would either. . . . [H]e agreed to consent to a search in lieu of having the vehicle removed . . . .

R.32 at 21-22 (Zambeck Test.).

Hines; had the credit union known of Mr. Hines' true identity and of his criminal and credit history, they likely would not have loaned him these funds. *See* R.33 at 17 (describing a conversation with authorities at CEFCU).

## B. District Court Proceedings

On February 18, 2004, a grand jury in the Central District of Illinois returned a two-count indictment that charged Mr. Hines with bank fraud. *See* 18 U.S.C. § 1344. On May 4, 2004, Mr. Hines filed a motion to suppress the evidence found in his vehicle, including the Ohio driver's license that led to the investigation of his bank activities, as the product of an illegal and unreasonable search.

The district court denied this motion on May 20, 2004. It determined that the agents' search of the vehicle was not supported by voluntary consent because the agents had no lawful authority to "impound the vehicle and subject it to an inventory search as they claimed." R.9 at 2. The court further determined that the search was not supported by probable cause because the hatchet was not contraband, and there was no basis for believing that the wallet, containing other fruits of illegal activity, would be found in the van. *Id.* at 3. Nevertheless, in the district court's view, the search was valid as an automobile search incident to arrest. The district court dismissed the fact that Mr. Hines was handcuffed and in the back seat of the squad car before the search commenced. Relying on *United States v. Willis*, 37 F.3d 313 (7th Cir. 1994), and *United States v. Arango*, 879 F.2d 1501 (7th Cir. 1989), the court concluded:

> [O]nce [Mr. Hines] was brought outside in close prox-
> imity to the car that he had only recently vacated, the

> rationale for the automobile exception is implicated; a search of the car is authorized for accessible weapons or evidentiary items, no matter that Defendant was cuffed and incapable of entering the automobile. I find this result troubling, but it appears to be consistent with our circuit court's commitment to a "bright-line" rule in applying the "incident to arrest" exception.

R.9 at 6. Mr. Hines, while reserving the right to appeal the district court's evidentiary ruling on the lawfulness of the search, pleaded guilty to both counts of bank fraud. *See* 18 U.S.C. § 1344.

At Mr. Hines' sentencing hearing, the Government called two witnesses. The first was the Vice President of Consumer Lending for CEFCU, who testified to the amount of loss for the purpose of calculating restitution. The second was FBI Special Agent Robert Brown, who detailed the FBI's investigation into Mr. Hines' use of a false identification for loan-related purposes. In pertinent part, Agent Brown confirmed that Mr. Hines had applied for an Ohio driver's license using a false name and that the license had been issued by the Secretary of the State of Ohio. He also testified to whether the information on Mr. Hines' Ohio driver's license belonged to an actual person:

> Q: In conducting the investigation, have you verified whether the name, the date of birth, or the social security number was of an actual, not fictitious individual other than the defendant Brian Hines?
>
> A: The name did not belong to any other individual.
>
> Q: Social security number?
>
> A: No.

Q:        Date of birth?

A:        No.

. . .

Court:    Let me make sure I understand that. You are
          stating that the name used in connection with
          these three exhibits, the social security num-
          ber, the date of birth, did not belong to any
          real person?

A:        Did not belong to any person other than Mr.
          Hines. Did not belong to a real person other
          than Mr. Hines.

. . .

Court:    Okay. Was the social security number used
          real in a sense that it had been issued by the
          United States Government?

A:        I don't know, Your Honor.

R.31 at 32-33.

On the basis of this testimony, the Government requested an enhancement for "use of any means of identification unlawfully to produce or obtain any other means of identification." U.S.S.G. § 2B1.1(b)(10)(C)(i). Defense counsel objected and submitted that, for U.S.S.G. § 2B1.1(b)(10)(C)(i) to apply, the false means of identification used must be that "of an actual (i.e., not fictitious) individual, other than the defendant." *Id*. § 2B1.1(b)(10) (C)(i), cmt. 9(A). Because Agent Brown's testimony indicated that the name, social security number and birth date used to obtain the Ohio driver's license did not belong to a real person, Mr. Hines insisted that the sentencing enhancement was improper.

The district court initially agreed with this contention. It took the view that the Government has the burden to prove by a preponderance of the evidence that a particular sentencing enhancement is proper. However, after further discussion of this issue, the district court concluded that the Government is not required to

> prove anything . . . until the defendant has caused by presenting something to make the Government prove up its burden. . . . Now if the defendant or some other witness for the defendant wishes to testify about [whether the alias used was that of a real person], then I take the position that the Government must bear the burden of proving [that the sentencing enhancement is proper]. . . . [It is] not put to that task until the defendants [sic] had gone forth sufficiently to cause the Government to be in that position.

R.31 at 90. The district court concluded that, because Agent Brown "was not presented to testify with reference to [the objection to the § 2B1.1(b)(10)(C)(i) enhancement]," his testimony could not be used to "suggest to the Court that now the Government has to carry its burden." *Id.* at 91.

The district court calculated Mr. Hines' sentence as follows: The base offense level was 6. A 6-point upward enhancement was added for a loss of more than $30,000 but less than $70,000, *see* U.S.S.G. § 2B1.1(b)(1)(D); a 2-point enhancement was added for "use of any means of identification unlawfully to produce or obtain any other means of identification," *id.* § 2B1.1(b)(10)(C)(i); and a 2-point reduction was granted for acceptance of responsibility, *id.* § 3E1.1(a). This calculation resulted in a total offense level of 12 and, coupled with a Criminal History Category of VI, yielded a sentencing range of 30-37 months. The district court sentenced Mr. Hines to 37 months' imprisonment on

each count, to run concurrently,[3] followed by two concurrent terms of 5 years' supervised release. The court also imposed a restitution obligation in the amount of $40,150.64.

## II

## ANALYSIS

### A. Motion to Suppress

Mr. Hines first contends that the district court erred in holding that the agents' search of his van was justified as a search incident to his arrest. The district court held that, under our recent precedent, although Mr. Hines was secured in the backseat of the squad car before the search commenced, the search was valid because he had been a recent occupant of the van and, after his arrest, had been brought by the agents within close proximity of the vehicle. In reviewing a district court's ruling on a motion to suppress, we review questions of law de novo and findings of fact and reasonable inferences drawn from those findings for clear error. *United States v. Yang*, 286 F.3d 940, 944 (7th Cir. 2002).

While the parties strongly dispute whether the search of Mr. Hines' van can be justified as a search incident to his arrest, we need not reach this issue.[4] Contrary to the district court's conclusion, the agents' search was supported by probable cause.

---

[3] The district court also ordered that Mr. Hines' sentence run concurrently with the sentence previously imposed for his violation of the terms of his supervised release. *See* R.26 at 2.

[4] For the same reason, we need not reach the question of whether the search was supported by Mr. Hines' voluntary consent.

Under the automobile exception to the warrant require-
ment, a law enforcement officer need not have a warrant to
search a vehicle when "there is probable cause to believe
that the search will uncover contraband or evidence of
crime." *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir.
2005); *see also Maryland v. Dyson,* 527 U.S. 465, 467 (1999)
(holding that there need not be an exigency for the automo-
bile exception to apply); *United States v. Washburn,* 383 F.3d
638, 641 (7th Cir. 2004) (explaining that this doctrine is
justified primarily by the realization that, because a car is
mobile, evidence could be destroyed before a search warrant
may be obtained). "[D]etermining whether probable cause
exists involves 'a practical, common-sense decision whether,
given all the circumstances set forth . . . there is a fair
probability that contraband or evidence of a crime will be
found in a particular place.'" *United States v. Markling,* 7
F.3d 1309, 1317 (7th Cir. 1993) (quoting with alteration
*Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

A fair reading of the record establishes that the agents had
probable cause to believe that the van would contain
evidence of Mr. Hines' alias and the identification used to
travel to and from Canada.[5] The agents had learned from

---

[5] The Government also suggests that there was probable cause
to believe that the van contained weapons, supported by Agent
Zambeck's sighting of the hatchet. This claim is without merit.
Probable cause requires a reasonable belief that a search will turn
up "contraband or evidence of crime." *United States v. Pittman*,
411 F.3d 813, 817 (7th Cir. 2005). The hatchet itself was not
contraband, and its possession was not illegal. Nor was its
existence in the car indicative of other illegal activity. Impor-
tantly, the evidence the FBI had gathered at that point on Mr.
Hines did not suggest violent activity, somehow linked to the

(continued...)

customs officials that, only three days prior, Mr. Hines had crossed the border from Canada to Buffalo, New York, in a dark blue van matching the description and license plates of the Chevrolet Suburban parked in Mr. Hines' driveway. At the time of the border crossing, he used a fake Ohio driver's license; this license was presumably also in his possession when he arrived home on December 31. Nevertheless, the police did not find the license on Mr. Hines' person when they searched him contemporaneous to his arrest; nor was it in the immediate vicinity. *See* R.32 at 16 (Zambeck Test.). Moreover, only a short time had passed between when Mr. Hines arrived home in the van—the same van in which he was traveling when he crossed the border, using the false

---

[5] (...continued)
possession of a hatchet; rather, he had been tied to leaving the country illegally. In addition, unlike the other cases in which we have found that a knife or similar tool in a car creates probable cause to search that vehicle, the Government can point to no other evidence corroborating the belief that the van contained contraband or evidence of illegal activity linked to weapon possession. *Cf. United States v. Tumea*, 2002 WL 31695094, at *2 (7th Cir. Dec. 2, 2002) (holding that seeing a knife and canister in the car—items consistent with an anonymous tip that the car contained dangerous weapons—gave the police probable cause to search the vehicle); *United States v. Pace*, 898 F.2d 1218, 1229 (7th Cir. 1990) ("Given that [the police officers] had probable cause to believe that [the defendants] were hit men, it was reasonable for them to believe that [they] were carrying the tools of their trade.").

Notably, the Government makes no argument that Mr. Hines' status as an individual on supervised release gave them any authority to search the van. Nor does the Government argue that his previous conviction for being a felon in possession of a firearm in any way justified a search of the van.

identification—and his subsequent arrest.[6] Indeed, it reasonably appeared to the officers that the process of unloading the van was still in progress. Given these facts, it was objectively reasonable for the police to believe that the identification might be found inside the van. This conclusion is bolstered by the fact that Mr. Hines' wife had lied to the police when they first approached the house and asked if she knew where her husband was, as well as evidence that Mr. Hines quickly fled from the vehicle and hid in the attic, only revealing himself when the agents threatened to "bring in the dog." *Id.* at 13. Both circumstances are suspicious and, when coupled with the other facts described above, could lead a law enforcement officer to conclude reasonably that the van contained evidence of Mr. Hines' unauthorized trip to Canada while on supervised release.[7]

---

[6] This assessment holds true regardless of the difference in the agents' testimony concerning whether they were absent from their post for two minutes or longer. Under both accounts, the time during which the agents were absent from Mr. Hines' residence was likely less than an hour.

[7] The parties dispute whether the agents asked Mr. Hines about the whereabouts of his wallet before the search. In addition, as the defense points out, the agents returned the van keys to Mr. Hines' wife after arresting Mr. Hines, apparently believing at the time that the van did not contain evidence of criminal activity. Nevertheless, the existence of probable cause is an objective, not a subjective, inquiry. It depends exclusively on whether the evidence, viewed from the position of a reasonable police officer, gives rise to probable cause to search the vehicle. *See Ornelas v. United States*, 517 U.S. 690, 696 (1996) ("[The proper inquiry is] whether [the] historical facts, viewed from the standpoint of an objectively reasonable police officer amount to . . . probable cause."); *Whren v. United States*, 517 U.S. 806, 813

(continued...)

**B.  Burden of Proof on Sentencing Enhancement**

Mr. Hines also submits that the district court erred in requiring him to bear the initial burden of production concerning whether his false identification was that of an "actual individual." U.S.S.G. § 2B1.1(b)(10)(C)(i), cmt. 9(A). The district court held that, although the Government has the ultimate burden of proof for sentencing enhancements, it is not required to "prove anything" until the defendant presents sufficient evidence refuting the applicability of the enhancement. R.31 at 90. The Government concedes, and we agree, that the district court's conclusion is inconsistent with our precedent and, therefore, resentencing is appropriate.

This court's case law clearly places upon the Government a "burden to prove by a preponderance of the evidence that [a particular] sentencing enhancement is warranted." *United States v. Ewing*, 129 F.3d 430, 434 (7th Cir. 1997). The district court was correct in recognizing that forfeiture principles require a defendant to make a specific objection to a sentencing enhancement. However, no principle of law requires that such an objection be supported by the testimony of a witness called by the defense; an oral or written statement of reasons for the objection suffices to place the court and the Government on notice of the content of the challenge. *See United States v. Gracia*, 272 F.3d 866, 872, 877 (7th Cir. 2001) (requiring the Government to "carr[y] its burden of proof by a preponderance of the evidence regarding [sentencing enhancement] matters," when the defendant filed written objections to the Presentence Report but presented

[7] (...continued)
(1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Therefore, these facts are not relevant to the probable cause inquiry.

"no additional evidence" at the sentencing hearing (internal quotation marks omitted)). In this case, the defense objected in writing to the sentencing enhancements recommended in the Presentence Report, including the 2-point enhancement under § 2B1.1(b)(10)(C)(i). These objections were repeated orally at the sentencing hearing. These measures were certainly sufficient to require the Government to carry its burden of proving, by a preponderance of the evidence, that the false information used by Mr. Hines was that of an "actual person," as required by the Commentary to the Sentencing Guidelines. U.S.S.G. § 2B1.1(b)(10)(C)(i), cmt. 9(A). The Government concedes that it did not meet this burden. Agent Brown testified that the name on the Ohio driver's license, "Huthiafa Abdul-Hakeem," as well as the birth date cited on the license, does not belong to a real person. *See* R.31 at 32-33. While Agent Brown could not state conclusively whether the social security number fraudulently used by Mr. Hines had been issued previously by the United States Government, this lack of information merely reflects a lack of proof on the Government's part—not that, as the district court held, the defendant was required to rebut this uncertainty by calling additional witnesses.

"An incorrect application of the guidelines," as occurred here, "requires resentencing under the post-*Booker* sentencing regime." *United States v. Scott*, 405 F.3d 615, 617 (7th Cir. 2005). Therefore, we remand the case to the district court to recalculate Mr. Hines' sentence in light of this opinion.

## Conclusion

For the reasons set forth in this opinion, we affirm the district court's ruling that the search and seizure of items in Mr. Hines' van, including his false identification, was

reasonable because it was based on probable cause. We vacate the district court's application of a two-point sentencing enhancement under U.S.S.G. § 2B1.1(b)(10)(C)(i) and remand to the district court for proceedings consistent with this opinion.

AFFIRMED in part;
VACATED and REMANDED in part

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*