Rovner, Circuit Judge.
*555 Martin Velazquez was arrested after agreeing to sell twelve kilograms of cocaine to an undercover agent. He conditionally pled guilty to one count of possession with intent to distribute a controlled substance. He retained his right to appeal the district court's denial of his motion to suppress the fruits of a warrantless search for the key evidence against him. That evidence was contained in a suitcase that he had placed in the bed of a pickup truck parked in the driveway of his home. We conclude that the search was supported by the officers' good faith reliance on then-existing circuit precedent, and we affirm the conviction on that basis.
I.
In August 2016, a confidential informant told a law enforcement official that a person named "Rafa" was a large-scale drug dealer in the Chicago area. The informant arranged for an undercover officer posing as a drug buyer to contact Rafa. In a series of recorded calls and text messages, the undercover officer agreed to meet Rafa in the parking lot of a Hobby Lobby craft store in Elgin, Illinois to discuss the purchase of twelve kilograms of cocaine. Rafa did not show up at the store, however, instead sending Velazquez to act as his intermediary. On August 22, 2016, Velazquez met twice with the undercover agent, first in the Hobby Lobby parking lot and then at a Super 8 motel parking lot that is also in Elgin. Over the course of those two meetings, Velazquez agreed to provide twelve kilograms of cocaine for $33,000 per kilogram. At the second meeting, Velazquez and the undercover officer agreed to conduct the transaction in a room at the Super 8 motel. After some confusion about whether the entire twelve kilogram quantity would be provided in a single transaction, Velazquez called a man in Mexico and handed the phone over to the undercover agent to discuss the matter. The man in Mexico agreed to sell the entire quantity at one time, and Velazquez then told the undercover agent that he would retrieve the cocaine from Hanover Park and return in ten or fifteen minutes with a suitcase containing the drugs. He asked the undercover agent to text him the hotel room number for the exchange.
The agent conveyed all of this to his fellow officers who were providing surveillance, including the detail that Velazquez intended to carry the cocaine in a suitcase. But Velazquez did not go to Hanover Park. The surveillance officers instead followed him to his home in Streamwood. Streamwood is a Chicago suburb that sits between Elgin and Hanover Park. Velazquez backed his truck into the driveway of his home, close to the door of the attached garage. He opened the garage door and entered the house through a regular door inside the garage, lowering the garage door behind him. Approximately a half hour later, Velazquez emerged from the house through the garage with a suitcase. As the garage door went up and the light came on, a passing surveillance officer saw Velazquez lift a weighty suitcase onto the bed of the truck. Twelve kilograms translates to approximately twenty-six pounds, not including the weight of the suitcase or packaging materials. Believing that they now had probable cause to arrest, the officers converged on the scene and took Velazquez into custody near the entrance to the garage.
*556 The officers had brought along a dog trained to detect the odor of controlled substances. Within a few minutes of the arrest and handcuffing of Velazquez, an officer led the dog around the truck to conduct a sniff. The dog quickly alerted to the odor of narcotics at the back of the truck where Velazquez had placed the suitcase. The officers then opened the suitcase and found twelve packages of cocaine weighing 11.9 kilograms in total.
Velazquez moved to suppress all physical evidence seized on August 22, 2016 as well as the statements that he subsequently made. He noted that he was arrested on his property, in the threshold of his attached garage. The truck bed, he asserted, was backed up to the garage and at least fifteen feet from the public sidewalk, and the suitcase was closed. The officers had no warrant, he contended, and yet they brought the dog onto his private property to conduct the sniff of the truck that was within the curtilage of his home without his consent and without any lawful authority to do so. He argued that such a search violated the Fourth Amendment under Florida v. Jardines , 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).
The government countered that the law enforcement officers had probable cause to arrest Velazquez, that they were justified in effectuating the warrantless arrest at the entrance to his garage, and that the search of the truck and suitcase was lawful either under the automobile exception to the warrant requirement or as a search incident to a lawful arrest. In reply, Velazquez contended that the arrest at the threshold of his attached garage violated the principle of Payton v. New York , 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), because there were no exigent circumstances justifying the intrusion into his home to make a warrantless arrest. No crime was committed in plain view of the officers, he asserted, because the incriminating nature of the suitcase was not immediately apparent. Again invoking Jardines , Velazquez argued that the police were not entitled to conduct a search of the curtilage of his home, that they had no right to bring the drug-sniffing dog onto his driveway, and that, absent exigent circumstances, the automobile exception to the warrant requirement did not apply to a car parked on a residential driveway. For the last proposition, he relied on a Fifth Circuit case, United States v. Beene , 818 F.3d 157, 164 (5th Cir. 2016).[1] He also argued generally that the officers lacked probable cause to believe that the truck contained evidence of a crime, and that the intrusion into the truck was not a valid search incident to arrest because, once he was handcuffed, the truck bed and the suitcase were not within his immediate control.
The district court held a hearing to determine what the officers saw before they arrested Velazquez and searched the truck. The government presented evidence that one of the surveillance officers saw Velazquez lifting the suitcase onto the truck bed using his knee to support the weight of the suitcase. Velazquez disputed that account, contending that he did not use his knee to lift the suitcase and that it was too dark for the officer to have seen this maneuver, especially because the view was obscured by another car parked in the driveway. The visible weightiness of the suitcase was important to show that the officers reasonably believed that it contained the promised cocaine and was not simply an empty suitcase. Velazquez had *557 told the undercover agent that he was retrieving the drugs in Hanover Park, and that he did not store them at his home because his wife and daughter were there. He asserted that the officers could not have seen the heaviness of the suitcase and, because of the change in location from Hanover Park to Streamwood, could not have reasonably believed that the suitcase contained the cocaine. At the conclusion of the hearing, the district court found that the officer saw Velazquez lift a weighty suitcase onto the truck bed. The court also found that, in light of the circumstances leading up to that moment, the loading of the heavy suitcase gave the officers probable cause to arrest Velazquez. The court then held that, "[w]ith that, under the law, the vehicle exception applies." R. 49, at 272. See United States v. Hines , 449 F.3d 808, 814-15 (7th Cir. 2006). In the alternative, the court found that because the officers had probable cause to arrest Velazquez, the contents of the suitcase would have been inevitably discovered and would be admissible on that basis as well. Velazquez appeals from the denial of his motion to suppress.
II.
When considering a district court's denial of a motion to suppress, we review findings of fact for clear error and questions of law de novo . United States v. Borostowski , 775 F.3d 851, 863 (7th Cir. 2014). In his opening brief on appeal, Velazquez contended that this court should overturn its decision in United States v. Hines , 449 F.3d 808 (7th Cir. 2006), and find that the automobile exception to the warrant requirement does not apply to vehicles parked on a defendant's private property. He noted that, as of the filing of his brief, this issue was pending on the Supreme Court's docket in a case that had been argued but not yet decided. He encouraged this court to defer ruling until the Supreme Court issued its opinion. He also asserted that the government failed to develop a record that would satisfy its burden under the inevitable discovery doctrine. Finally, he argued that the search of the truck could not be supported as a valid search incident to arrest. The government countered that the search was justified (1) by good-faith reliance on then-existing circuit precedent; (2) under the exigent-circumstances exception to the warrant requirement; or (3) under the principles of inevitable discovery.[2]
We begin with Hines , which controlled at the time of the search here. In that case, the defendant was on supervised release and was not allowed to leave the country without prior permission. Late in 2003, customs officials notified the probation office that Hines had crossed the border from Canada into New York the previous day. Hines had used a fake Ohio driver's license (bearing a false name) in making the crossing and was traveling in a dark blue van with Illinois license plates. 449 F.3d at 810. The probation office notified the FBI, which began to surveil Hines's two residences in Peoria, Illinois.
On the third day of surveillance, two agents arrived outside one of the residences and found the house dark and the driveway empty. The agents left for a short time and returned to find a dark blue Chevrolet Suburban with Illinois license plates in the driveway. The side doors of the vehicle were ajar, and it was backed into the driveway adjacent to the residence, giving the impression that it was being unloaded. Seeing no one outside, *558 the agents approached the house and told Hines's wife that they had a warrant for her husband's arrest. When she denied knowing her husband's whereabouts, they searched the house. A set of car keys on a bunk bed beneath an attic hatch-door led them to believe that Hines was hiding in the attic. When they announced that they would bring in a dog, Hines emerged from the attic. After officers arrested and handcuffed him, they searched the home on the basis of a warrant issued for the violation of the terms of supervised release. 449 F.3d at 810-11.
The agents then walked Hines out of the home past the blue van and secured him in the backseat of a police car. As he was walking past the van, one of the agents shined a light into the driver's side window and saw what appeared to be a hatchet on the floor. After Hines refused a request for consent to search the van, the agent sought advice from an Assistant United States Attorney. The AUSA advised the agent to impound the vehicle, inventory its contents and then obtain a warrant for a more thorough search. When Hines learned of this plan, he consented to the search so that his wife would be able to retain the vehicle. The search turned up the fake driver's license and a few other items that subsequently led to evidence of bank fraud. 449 F.3d at 811.
In the prosecution for bank fraud, Hines moved to suppress the evidence recovered from the blue van, including the fake driver's license and the evidence obtained as a result of finding that license. The district court upheld the search of the van as a valid search incident to arrest. On appeal, we remarked that we did not need to consider whether the search of the van could be justified as a search incident to arrest or whether Hines's consent was voluntarily provided. Instead, we held that the search was supported by probable cause and was justified under the automobile exception to the warrant requirement. We noted that the agents had probable cause to believe that the van contained evidence of the fake driver's license because the agents did not find it on Hines's person or in the search of the house even though Hines had very recently arrived home. Under the circumstances, we found that reasonable officers could conclude that the van contained evidence of Hines's unlawful trip out of the country. We noted that, under the automobile exception to the warrant requirement, a search could be conducted so long as there was probable cause to believe that vehicle contained contraband or evidence of a crime. We thus upheld the warrantless search of the van that was parked on Hines's driveway and pulled up close to his home solely on the basis of the automobile exception. Hines , 449 F.3d at 814-15.
Although Hines was the law of this circuit at the time the officers searched Velazquez's truck, before the government filed its appellate response brief, the Supreme Court issued its decision in Collins v. Virginia , --- U.S. ----, 138 S.Ct. 1663, 201 L.Ed.2d 9 (2018), calling the continued validity of Hines into question. In Collins , the question posed was "whether the automobile exception justifies the invasion of the curtilage." 138 S.Ct. at 1671. The Court responded, "The answer is no." Id . Police officers in Collins were searching for the driver of an extended-frame motorcycle who had twice evaded them after committing traffic infractions. The officers received information leading them to believe that the motorcycle was stolen and that Collins was in possession of it. An officer then went to Collins's home and saw from the street an object at the top of the driveway that appeared to be a motorcycle with an extended frame covered by a tarp. The officer walked onto the driveway, pulled off the tarp, and discovered that it *559 was a motorcycle resembling the one involved in the traffic infractions. The officer ran a search of the motorcycle's license plate and vehicle identification number and confirmed that it was the one that the police had been seeking. When Collins returned home, he admitted to the officer that the cycle was his and that he had purchased it without title. The officer then arrested Collins. 138 S.Ct. at 1668-69.
Collins moved to suppress the evidence that the officer obtained as a result of the search on the driveway, arguing that the officer trespassed onto his home's curtilage to conduct a warrantless search. The Virginia Supreme Court upheld the search on the basis of the automobile exception to the warrant requirement. The U.S. Supreme Court took up the case to decide whether the automobile exception should apply when the vehicle in question is parked on the curtilage of the defendant's home. The motorcycle was parked in an area of the driveway that the Court described as an "enclosure" that was surrounded on two sides by low brick walls and on the third side by the home itself. The Court concluded that the enclosure was an area adjacent to the home and to which home life extended and so it was curtilage. The Court then considered the interaction between the Fourth Amendment protections provided to the curtilage of a home and the automobile exception to the warrant requirement:
Just as an officer must have a lawful right of access to any contraband he discovers in plain view in order to seize it without a warrant, and just as an officer must have a lawful right of access in order to arrest a person in his home, so, too, an officer must have a lawful right of access to a vehicle in order to search it pursuant to the automobile exception. The automobile exception does not afford the necessary lawful right of access to search a vehicle parked within a home or its curtilage because it does not justify an intrusion on a person's separate and substantial Fourth Amendment interest in his home and curtilage.
Collins , 138 S.Ct. at 1672. The Court ultimately held that, "the automobile exception does not permit an officer without a warrant to enter a home or its curtilage in order to search a vehicle therein." 138 S.Ct. at 1675. Although Hines did not specifically address whether the vehicle was parked on the home's curtilage, given the placement of the car in Hines so close to the home itself, Collins calls the continued validity of Hines into question.
The district court here did not assess whether the area of the driveway where Velazquez's truck was parked was within his home's curtilage and we decline to decide the issue in the first instance. From photographs of the property provided by Velazquez, it appears that a person wishing to approach the front door of the home must walk either through the front lawn or up the short driveway to the threshold of the garage door in order to access a sidewalk to the front door. R. 36-1. It also appears that the garage itself is fully integrated into the house, with living space above the garage, behind it and immediately to the left. The part of the driveway that sits between the garage door and the public sidewalk appears wide enough for two vehicles to be parked side by side, but not long enough for one vehicle to be parked behind another without impinging on the sidewalk. Although the view of the garage interior from the side is partially obstructed by a small bush on the left and by a tree on the right, a person standing on the public sidewalk or street directly in front of the garage would have an unobstructed view of the entire driveway and, when the door is up, the interior of the garage. At the back of the garage is a door leading into the living space of the house.
*560 That the warrantless arrest itself took place on the driveway is not problematic. In United States v. Santana , 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the Supreme Court held that the police may conduct a warrantless arrest upon probable cause on the threshold[3] of a defendant's open front door, where she "was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." Velazquez does not challenge on appeal the district court's conclusion that the officers had probable cause to believe that he was in the process of committing a crime when they saw him load a weighty suitcase onto his truck bed shortly after agreeing to deliver a suitcase full of cocaine from his Mexican supplier to an undercover agent. If we were to assume for the sake of argument that the threshold of Velazquez's garage door is equivalent to the threshold of a home's front door, the officers were entitled to effectuate the arrest in a place where Velazquez was as exposed to public view and touch as if he had been standing completely outside his house. See also Illinois v. McArthur , 531 U.S. 326, 335, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001) (citing Santana for the proposition that a person standing in the doorway of a house is in a public place, and hence subject to arrest without a warrant permitting entry of the home).
At the time the officers brought the dog onto Velazquez's driveway to conduct the sniff, Hines permitted the warrantless search of a vehicle parked close to a house on the defendant's private driveway so long as there was probable cause to believe that the search would uncover contraband or evidence of a crime. Hines , 449 F.3d at 814. Velazquez concedes in his reply brief that the officers had probable cause to believe that the suitcase contained cocaine. The district court here denied the motion to suppress after concluding that there was probable cause to search the truck and that the automobile exception therefore applied under controlling precedent. Velazquez asks us to overturn Hines but overturning Hines does not resolve the admissibility of the evidence. Courts generally do not suppress unlawfully obtained evidence when the police acted on an objectively good-faith belief that their conduct was lawful at the time of the search.[4] Davis v. United States , 564 U.S. 229, 241, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (when binding appellate precedent specifically authorizes a particular police practice, the exclusionary rule should not apply if that precedent is later overruled by the Supreme Court); United States v. Leon , 468 U.S. 897, 918-21, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (evidence obtained in objectively good-faith reliance on a subsequently invalidated search warrant should not be excluded); United States v. Jenkins , 850 F.3d 912, 918 (7th Cir. 2017) (unlawfully obtained evidence should not be suppressed when police officers acted with an objectively good-faith belief that their conduct was lawful). That is exactly what happened *561 here. Velazquez's assertion that the officers here showed no particular awareness of Hines is irrelevant; the test is an objective one which assesses "whether a reasonably well trained officer would have known that the search was illegal" in light of binding appellate precedent. Leon , 468 U.S. at 922 n.23, 104 S.Ct. 3405. See also United States v. Martin , 807 F.3d 842, 847 (7th Cir. 2015) (same). Because Hines was the law of the circuit when the officers conducted the dog sniff of Velazquez's truck and search of the suitcase, the court properly denied the motion to suppress.
AFFIRMED

In Beene , the Fifth Circuit upheld the warrantless use of a dog sniff on an open driveway under the open fields doctrine, but concluded that the automobile exception did not apply to a vehicle parked on private property in the absence of exigent circumstances.

Because we rest our decision on good-faith reliance on circuit precedent, we will not address the government's alternate arguments except to note that both theories suffer significant weaknesses on this record.

In Santana , the Court clarified the position of the defendant as "directly in the doorway," noting that "one step forward would have put her outside, [and] one step backward would have put her in the vestibule of her residence." 427 U.S. at 40 n.1, 96 S.Ct. 2406.

We reject Velazquez's contention that the government waited too long to raise the issue of good-faith reliance on then-existing circuit precedent. The district court ruled on Velazquez's motion to suppress on April 21, 2017. The Supreme Court granted certiorari in Collins five months later, and did not decide the case until May 29, 2018, after briefing on Velazquez's appeal was underway. The government timely raised good-faith reliance in its August 1, 2018 appellate brief, having no reason before then to make the argument.